CAMPBELL & VOSS vs. POULTNEY, ELLICOTT & Co. et al.
June, 1834.

A bill alleged that C and others were stockholders in the *Union Bank of Maryland*, and that by its charter regulating the right to vote for directors, a certain standard of voting was prescribed, fixing *sixty* votes as the *maximum* to which any single proprietor of stock could be entitled, and that no share should confer the right of suffrage which should not have been holden four calendar months previous to the day of election; that P and E large proprietors of stock, with the fraudulent intent of evading the provisions of the charter in that respect, and for the purpose of increasing their number of votes, caused a number of shares to be transferred to *divers unknown persons* without consideration, and colorably, taking from the transferrees powers of attorney, securing to them P and E all control over said stock, and the right to vote the same at their discretion; that this was a fraud upon the charter and complainants as stockholders, of which P and E designed to avail themselves at the coming election. The bill prayed an injunction against P and E, the President, Directors, and officers of the bank, and the judges of its election, and for *subpœna* against P and E, T E president of the bank, R M cashier thereof, five of the directors by name, three of the clerks of the bank, and the judges of the election when appointed. Upon this bill it was held.

1. That the matter of the bill furnished sufficient ground for the interposition of a court of equity.

2. That the facts stated are a violation of the principles and spirit of the charter, and if carried into effect would be a practical fraud upon the complainants, and in derogation of their chartered rights, for which an injunction was the appropriate remedy.

3. That the relief granted by the injunction was a proper remedy.

4. That the objection for the want of proper parties, and to the injunction, having issued against persons unknown, is not sustainable.

APPEAL from the court of Chancery.

On the 3d of July, 1834, the appellants filed their bill on the equity side of *Baltimore* county court, for the purpose of restraining by injunction the voting of certain shares of stock in the *Union Bank of Maryland*, at an election of directors of said bank then about to take place.

The bill alleged that the appellants *James Mason, Campbell* and *Robert S. Voss*, are stockholders in the said bank, which was chartered in the year 1804. That by the 10th

section of the act of incorporation, certain rules and limitations are prescribed, regulating the right to vote for directors in the proportions following, that is to say; for one share and not more than two, the holder shall be entitled to two votes; for every two shares above two and not exceeding ten, one vote; and so on, the ratio increasing progressively according to the number of shares, and fixing sixty as the greatest number of votes to which a single proprietor of stock shall be entitled; and declaring that no share or shares shall confer the right of suffrage, which shall not have been holden four calendar months previous to the day of election. That the legislature in fixing the standard of voting, designed preventing the power of electing directors being concentrated in a few hands, and that the rights of the small stockholders should be protected. That the appellees *Samuel Poultney* and *William M. Ellicott* trading under the firm of *Poultney, Ellicott & Co.* having during the years 1833-34, become the proprietors of between two and three thousand shares of stock in the said bank, with the fraudulent intent of evading the provisions of the charter in that respect, and for the purpose of increasing the number of votes which otherwise they would be entitled to on their aforesaid stock, at the ensuing election of directors to take place on the first Monday of the present month of July, caused about two thousand shares thereof, then as the complainants charge and believe, pledged to the said bank for advances made to the said *Poultney, Ellicott & Co.* to be transferred to divers unknown persons, without consideration and colorably; taking at the same time from the transferrees powers of attorney, securing to them, the said *Poultney, Ellicott & Co.* all control and authority over said stock, and the right to vote the same at their discretion. That these transfers were made some time in the latter part of February, or the beginning of the last March. That this arrangement, by which these proprietors seek to exercise a greater influence in the ensuing election of directors, than by the charter

they would otherwise be entitled to, is not only a fraud on that instrument, but upon the complainants and all the other stockholders, and may result in the election of a board of directors, not the choice of the legal voters. The bill then prays, that an injunction may issue prohibiting the said *Samuel Poultney* and *William M. Ellicott,* the president, directors, and officers of the bank, their agents and servants, from voting the said stock at the ensuing election; and the judges of the election from receiving any vote, which may be tendered by virtue of any power of attorney, which may be executed by any persons to whom the said stock may have been transferred by the said *Poultney* and *Ellicott,* and for general relief; and that *subpœnas* may issue against the said *Samuel Poultney* and *William M. Ellicott, Thomas Ellicott* president of the *Union Bank of Maryland, Robert Mickle* cashier thereof, five of the directors by name, three of the clerks, and the judges of election when appointed.

An injunction according to the prayer of the bill was granted by the county court, with leave to the defendants to move for its dissolution, on the succeeding Saturday the 5th inst.

The proceedings having been removed to the high court of Chancery upon the suggestion of the defendants, and a general demurrer filed to the bill; the motion to dissolve was heard by his honor, *Bland,* Chancellor, on the 5th, agreeably to the above leave, and the injunction was by him dissolved on that day.

From the order dissolving the injunction an appeal was allowed, under the act of 1832, *ch.* 97, and the record accordingly brought before the court of Appeals at this term.

The cause was argued before BUCHANAN, Ch. J., and MARTIN, STEPHEN, ARCHER, and DORSEY, J.

*A. C. Magruder,* for the appellants, contended.

1. That the allegations in the bill amounted to a violation of the charter of the bank, and show that the shares in

Campbell and Voss *vs.* Poultney, Ellicott & Co. *et al.*—1834.

question cannot be voted, at the election referred to. A bank, though a corporation, is in the nature of a partnership, and the corporators *inter se,* have all the rights of partners. Every stipulation in the contract of partnership, not contrary to some principle or the policy of the law, should be fairly executed. This controversy is among the individual stockholders, and involves no complaint against the bank as a corporation. It does not seek a forfeiture of the charter—if it did, a court of law would be the proper tribunal. There is no case in which a court of Chancery may not interfere by injunction to prevent frauds, or breaches of contract and good faith. 1 *Mad. Ch. Pr.* 125. *Chitty's Gen. Pr.* 704. In such a case as the present, the remedy is not by *mandamus. Chitty's Gen. Pr.* 789. But if it was, it does not follow that Chancery could not interpose by injunction. *Jeremy's Eq.* 306. There can be no doubt that the transfer of the shares in question, for the purpose charged, could have been restrained by injunction, and if the transfer could have been prevented, why may not the object of the transfer be frustrated in the same way. 6 *Johns. Ch. Rep.* 160. 1 *Ib.* 18. And the same cases show that if the election had taken place, and had been controlled by these votes, the court could still have interfered by injunction, though the operations of the bank would have been arrested by it.

The judges of the election can only look to the books in determining the right to vote. They have no power to inquire into the facts connected with the transfers; but if they had the power, they have not the means of arriving at the truth. In this case an injunction is the appropriate remedy. 9 *Johns. Rep.* 507. 1 *Johns. Ch. Rep.* 611. 4 *Ib.* 150. 6 *Ib.* 439. 2 *Dallas.* 405.

*Constable, Otho Scott, Nelson,* and *Winchester,* for the appellees.

1. The bill is defective in not making proper parties,

either complainants or defendants, and in that respect presents a case unfit for an injunction.

There is no allegation of a breach of trust, or violation of the charter by the corporation. The controversy is limited to the corporators themselves; involving merely a question of *privilege,* and affecting no right of property. The bank as a corporation is not a party, nor are the transferees of the stock, whose privileges it is the object of the bill to affect. The president, and cashier, and certain of the directors, *eo nomine* are made parties; but not the bank by its *corporate name,* by which alone, can it sue and be sued. 2 *Paige,* 449.

No decree settling the rights of the parties can be passed, without making the bank a party, whose very existence is suspended by the proceeding. It should therefore be before the court to defend itself. The fraud complained of cannot be consummated except through its agency.

If the charter constitutes a contract, it is a contract between the corporation and the State, and each corporator with the corporation; and yet this bill, complaining of a violation of the contract, does not bring the corporation, one of the contracting parties, before the court. The transferrees also should have been before the court, in vindication of their rights, and to repel the charge of fraud. If the names of the transferrees were not known, the information should have been asked of the bank, and not of *Poultney, Ellicott & Co.* An injunction will never issue against any but parties to the bill, having substantial interests, as have these transferrees and the bank. 4 *Johns. Ch. Rep.* 25. Nor have the proper parties complainants been made.

The bill charges a violation of the charter of the bank, and yet the bank is not a complainant. The charter is not the charter of these complainants, but of the bank. In legal contemplation the complainants have no interest in the charter. If the rights of any of the corporators are affected by the acts complained of, the rights of all are; and all therefore, as represented by the corporation, should make

the complaint. If the present bill is sustained, then each stockholder might file his bill for the same thing.

2. Chancery has no jurisdiction of the case presented by the bill. The funds of the institution are not involved, but merely a privilege in reference to an election. No case can be found, in which a court of Chancery has interfered with a corporate election. When the power of the corporation in that respect has been abused, the injury may be redressed; but never interfered with in anticipation. Such an interference would be an evasion of a chartered privilege. 2 *Kent's Com.* 244. 286. An abuse of the privilege may be corrected by a *mandamus,* or *quo warranto* from a court of law, but Chancery has no such power. 2 *Kent's Com.* 252. 17 *Ves.* 498. 6 *East.* 356. *Angel and Aimes,* 432. 1 *Hopkins,* 359.

The case in the Supreme court of the *United States,* was between the corporation, *as such,* and a stranger to it, in which the former was vindicating its corporate franchises. In 6 *Johns.* 161, the Chancellor avoided the question purposely; and in the case cited from 439 of the same book, the controversy was in regard to property, and not corporate franchises. In 1 *Johns.* 18, the injunction was not to prevent an election, because it issued before the bank came into existence.

3. But suppose the court possessed the power, this bill does not make a proper case for its exercise. The judges of the election have power to decide all questions touching the election; and this court will not, upon the presumption of an abuse of that power, supersede the authority of that tribunal, and in effect abolish it altogether. Whether the stock in question shall be voted or not, is a question peculiarly fitted for the judges to decide, and with their discretion in that respect, it would be most unbecoming in the court of Chancery to interfere.

This bill merely asks for the interposition of the *preventive* power of the court, which is never put forth except where the injury anticipated is likely to prove irreparable.

But here it is impossible to say how the votes will be given, and of course it cannot be asserted that the complainants will be injured.    They complain of a mere potential mischief.

4. The facts charged in the bill do not constitute a fraud, nor the acts complained of amount to a violation of the charter of the bank.    6 *Harr. and Johns.* 126.    *Chit. Dig.* 1184. A beneficial interest in the stock is not necessary to entitle the party to vote.    6 *Wend.* 510.    4 *Cowen.* 358.    A transfer on the banks books will prevail against a transfer of the certificate of the stock.    3. *Wheat.* 390.    Nothing more is required than that the stock should be transferred as provided by the charter.    If a beneficial interest had been required, the legislature would have said so, and given the judges of election authority to inquire into the fact.

*Johnson,* in reply.

Before the charter of the *Union Bank* was granted, an association of individuals had been banking under certain articles.    The charter gave these individuals the privilege of banking under a corporate name, and *exempted them* from personal responsibility.    Neither the members of the association or the legislature, could have supposed or intended, that the section limiting and regulating the right to vote, should be *nugatory* either in theory or practice.    If this section of the charter may be *evaded,* why may not every other?    The bank it is true, can only look to its books in ascertaining who is the proprietor of its stock, but as between individuals, the question always is, *who is the real owner.*    The case in 6 *Harr. and Johns.* 439, decides, that a party who has conveyed property colorably to another, to make him eligible to office, cannot recover it back; but it does not decide, that the grantee was rendered eligible by such conveyance.    The case in 4 *Cowan.* 358, is totally different from this.    There the transferrees were *bona fide,* and the object was to have the stock represented; whilst here, the purpose is the *fraudulent one* of multiplying the

number of votes to which the stock is fairly entitled, by *fictitious* transfers.

According to the charter, *Poultney, Ellicott & Co.* are entitled to but *sixty* votes, which the bill alleges they intended to increase to *two thousand,* by the contrivance complained of. This, by destroying the fair relative influence of the complainants in the election, is an obvious fraud upon their rights.

It has been argued that the proper remedy is by *quo warranto,* but as the judgment upon that writ would destroy the charter, which the complainants are interested in maintaining, it would not answer their purpose. The writ of *mandamus* is equally inefficient. That is a proceeding to oust those who are not entitled to possession, and to put in those who are. It can only be resorted to after the *fraudulent* party has acquired the possession, and has it in his power to use the funds of the bank to defend his own usurpations. It is a dilatory tedious proceeding, which could not be brought to a close in less than twelve months; during which *irreparable* injury might be done the complainants and others, not only in the employment of their own money in defending the possession of the illegally appointed directors, but in lending the funds of the bank to persons in whom a properly chosen board would have no confidence.

The subjects of complaint presented by this bill, could not be investigated by the judges of election. They have no process to bring witnesses before them, nor could they swear them if they had. Besides, if the judges are competent to decide such questions, their judgment must be conclusive, and then neither *quo warranto* nor *mandamus* would lie.

The objection as to parties can have no effect upon the present motion. The bill charges fraud, and the demurrer admits it, and gives no notice that the want of parties is relied on. A demurrer for want of parties must show who are the proper parties. *Mitf.* 238. If all necessary parties are not made, the injunction is not on that account to

be dissolved, but the bill should be amended.  *Act* 1832, *ch.* 302, *sec.* 6.  It has been said that an injunction will never issue but against parties, but if this be so, it does not follow that it is to be dissolved, as to those who are made parties.  But the necessary parties are made.  4 *Johns. Ch. Rep.* 25.

The transferrees the bill alleges were not known, but if they were, the absence of all interest in them is admitted by the demurrer.  Neither can the bank as a corporation have an interest, the question affecting merely the rights of individual stockholders.  If however the bank should be considered a necessary party, she is one, process being prayed against the president and directors.

The court of Appeals reversed the order of the Chancellor with costs to the appellants in both courts; awarded an injunction to have the same effect as the one originally granted by the county court; and remanded the proceedings to the court of Chancery, that the necessary orders might be passed by that court to give the appellants the benefit of this decree.

In pronouncing this opinion BUCHANAN, Ch. J., stated the grounds to be,

1. That the matter of the bill furnishes sufficient ground for the interposition of a court of equity.

2. That the facts stated are a violation of the principles and spirit of the charter, and if carried into effect would be a practical fraud upon the appellants, and in derogation of their chartered rights, for the protection of which an injunction was the appropriate remedy.

3. That the relief granted by the injunction was a proper remedy.

4. That the objection raised in argument for the want of proper parties, and to the injunction having issued against persons unknown, is not sustainable.

ARCHER, J., dissented, and stated that he was of opinion that the decree of the court of Chancery should be affirmed.

The determination of the right of voting for the officers of incorporated institutions such as this, is purely a question of legal cognizance, with which a court of Chancery has nothing to do. He said, that if he believed the court could entertain jurisdiction in the case, he would perhaps have had little difficulty in saying, that the facts set forth in the bill, presented a case which, if carried into execution, would have been a violation of the charter.

Entertaining the opinion above expressed upon the subject of jurisdiction, he expressed no opinion upon the subject of parties, not deeming the consideration of that question necessary.