WILLIAM P. WEBB, and others, *vs.* JAMES L. RIDGELY, and others.

*Equity Pleading—Injunction—Construction. of Act of* 1868, *ch.* 471, (*General Corporation Law,*) *in connection with a special Act of incorporation — Repeal by implication.*

Although a bill may pray for relief by way of injunction, yet if it does not pray for the process of injunction, the process will not be granted. But such prayer need not be included in the prayer for process of *subpœna,* if it is sufficiently set forth elsewhere in the bill.

Where a bill charged that transfers of stock of a corporation had been colorably made, for the purpose of fraudulently controlling an election, to certain persons, "as appears from a list of the stockholders furnished" by the President, one of the defendants, and praying an injunction against the voting of said stock, it was HELD:

1st. That injunction was the appropriate remedy.

2nd. That the list was in no way material to the granting of the injunction, and need not be filed as an exhibit to the bill.

The B. & L. Turnpike Co. was chartered by the Act of 1860, ch. 274. The 4th section of its charter provides that "at all elections, each stockholder shall be entitled to one vote for each share of stock held by him, not exceeding twenty votes in all." Section 53, of the Act of 1868, ch. 471, (*General*

Corporation Law,) provides that "in all corporations in which there are stockholders, ※ ※ ※ ※ each stockholder shall be entitled to as many votes as he owns shares of stock." A question having arisen as to the effect of the latter section upon the 4th section of the charter, it was HELD:

That under the provisions of section 216 of the General Corporation Law, which subjects all corporations theretofore formed to its regulations, *so far as the same be applicable,* the two sections in question could stand together, and that the 4th section of the charter was binding upon the stockholders.

A law may be repealed by a subsequent law, without any express clause of repeal, where the two provisions are so repugnant that they cannot stand together.

"A full and adequate remedy at law," as a defence in Equity pleading, means such a remedy at law as ousts the jurisdiction of a Court of Equity—a remedy in a Court of Law.

APPEAL from the Circuit Court of Baltimore City.

﹒ The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, BRENT, GRASON and MILLER, J.

*Samuel Snowden,* for the appellants.

In order to obtain a preliminary injunction to restrain the defendants' proceedings pending the suit, there should be a formal prayer for such process. *Wood vs. Beadell,* 3 *Sim.,* 273 ; *Walker vs. Devereaux,* 4 *Paige,* 248 ; *Union Bk. vs. Kerr,* 2 *Md. Ch. Dec.,* 467 ; *Story Eq. Plead., sec.* 44 ; *Lewiston Falls Co. vs. Franklin Co.,* 54 *Maine,* 402, 404 ; *Hilliard on Injunctions,* 53.

The bill in this case contains in the prayer for relief a prayer for an injunction, but in the prayer for process it only asks for subpœnas, which, under the authorities cited is not sufficient, and the injunction should not have been granted.

To warrant a Court of Equity in issuing an injunction, strong *prima facie* evidence of the facts on which com-

plainant's equity rests must be presented to the Court to induce its action ; and if the complainant is in possession of such evidence, it must be filed with the bill or its absence satisfactorily accounted for. *Union Bank vs. Poultney,* 8 *G. & J.,* 332 ; *Nusbaum vs. Stein,* 12 *Md.,* 318 ; *Mahaney vs. Lazier,* 16 *Md.,* 69 ; *Hankey vs. Abrahams,* 28 *Md.,* 588 ; *Banks vs. Busey,* 34 *Md.,* 437.

The complainants in this case rely for their equity against the defendants upon a list furnished by William P. Webb, from which it appears, that the parties named are fraudulent transferrees. This *list* is, therefore, the very foundation of their case ; for from it they obtain the knowledge that any transfers have been made, and to whom they were made. The fact alleged by them that fraudulent transfers have been made, is the very gist of their equity, upon which all the other allegations in their bill are founded, and it was, therefore, of the first importance that all the evidence of that fact in their possession should have been presented with the bill.

So much of section 4 of the Act of 1860, ch. 274, as provides, "*that each stockholder shall be entitled to one vote for each share of stock held by him not exceeding twenty votes,*" is repealed by section 53 of the Act of 1868, chapter 471, which provides, "*that in all corporations in which there are stockholders, all elections shall be by ballot, and each stockholder shall be entitled to as many votes as he owns shares of stock in said corporation.*" As the last named law prescribes an entirely different rule from the Act of 1860, and is wholly inconsistent with and repugnant to that provision, it must be held to be a repeal of so much thereof as it is thus inconsistent with. *Potter's Dwarris,* 155 ; *Johnson vs. Boyd,* 1 *Hemp.,* 434 ; *Southport vs. Ogden,* 23 *Conn.,* 128 ; *Daviess vs. Fairbain,* 3 *How.,* 636 ; *U. S. vs. Tynen,* 11 *Wall.,* 92 ; *Dash vs. Vankleeck,* 7 *Johns.,* 497 ; *Balto. & Susquehanna R. R. vs. Woodruff,* 4 *Md.,* 242, (256) ; *Great Cen. G. C. Co. vs.*

*Clarke,* 13 *Com. Bench,* (*N. S.,*) 838 ; *Same Case,* 11 *Com. Bench,* 814 ; *Comrs. of Wash. Co. vs. Nesbitt,* 6 *Md.,* 468.

It is admitted, that Courts do not favor the repeal of laws by implication, and will only hold a law to be repealed by a subsequent law without any express clause of repeal, when the two provisions are so repugnant that they cannot stand together. No two provisions could be more repugnant than that quoted from the Act of 1860, and that from the Act of 1868. *Livingston vs. Harris,* 11 *Wend.,* 334.

The complainant had a full and adequate remedy at law, and a Court of Equity had, therefore, no jurisdiction. 1868, *ch.* 471, *secs.* 8, 9, 10 *and* 11.

The sections of the law above referred to, provide a mode by which the title of the electors to their stock may be investigated before they are allowed to participate in the election, and the form of the oath prescribed by section 9, covers precisely the ground upon which the complainants place their right to ask for an injunction in this case ; it is made the duty of the judges of the election to administer that oath to every stockholder, and requires it to be annexed to every proxy. A Court of Equity could not, therefore, presume that the judges would act contrary to their duty, and supersede their authority altogether by undertaking before-hand to say what stockholders should vote.

*Fielder C. Slingluff,* for the appellees.

Although the appellants have filed their answers, and they appear in the record, they are not to be considered in this appeal, but the Court is confined to the case as made by the bill. *Wagner & Marshall vs. Cohen,* 6 *Gill,* 97 ; *Guyton vs. Flack,* 7 *Md.,* 402 ; *Haight & O'Connell vs. Burr,* 19 *Md.,* 133.

The appellees rely upon the equities disclosed by their bill, as proper grounds for the granting of the injunction.

*Campbell & Voss vs. Poultney, Ellicott & Co.*, 6 *G. & J.*, 94.

BRENT, J., delivered the opinion of the Court.

The object of the bill in this case is to restrain by injunction William P. Webb and others from voting certain shares of stock, at the annual election of directors of the Baltimore and Liberty Turnpike Company, which it is charged were colorably and without consideration, transferred by said Webb to divers persons, who are named in the bill, with the fraudulent intent of evading the fourth section of the charter of the Company, (*Act of* 1860, *ch.* 274,) which provides that each stockholder shall be entitled to one vote for each share of stock held by him, *not exceeding twenty votes in all.*

The Court below passed an order granting the injunction as prayed, from which the appellants, after filing their answer, have taken the present appeal. The only question before this Court, as it was before the Court below, is whether the bill presents sufficient grounds for the interposition of a Court of Equity by way of injunction.

The first objection to the bill is, that it contains no prayer for process by way of injunction. There is no doubt under the established rules of Equity pleading, that in order to obtain a preliminary injunction there must be a formal prayer for such process, for although a bill may pray for relief by way of injunction, yet if it does not pray for the process of injunction, the process will not be granted. 4 *Paige*, 248; 2 *Md. Chan. Decs.*, 467; *Story's Eq. Plea.*, sec. 44; *Hilliard on Injunc.*, p. 53, *sec.* 126. But we do not think, upon an examination of the present bill, that it is liable to this objection. It is true that the injunction is not asked for in the prayer for process of *subpœna;* but in a clause of the bill immediately preceding and after the prayer "for relief

by the writ of injunction," the following application is found set out: "Wherefore your orators pray that the writ of injunction may issue, prohibiting the said Abner Webb" and others specially named, "from voting the said stock, at the ensuing election to be held on the 10th inst., in person, and the said William P. Webb, the president of said Company, C. H. Gundersdorff, the secretary, and the directors of said Company, their officers, agents or servants, from voting the said stock by virtue of any power of attorney to them from the above fraudulent transferrees, and prohibiting the judges of election from receiving any of said votes, which may be tendered in person or by virtue of any power of attorney which may be executed as aforesaid." We do not understand that the bill could contain a more formal prayer than this for process by way of injunction; and we can see no reason, and know of no authority why such a prayer should necessarily be included in the prayer for process of *subpœna*. If the prayer is sufficiently set forth in the bill, it is all that equity pleading requires, and it is unimportant whether it is made a separate prayer, as in the bill in this case, or is united with the ordinary prayer for *subpœna*.

The next objection to the order granting the injunction is, that the bill charges that certain persons named therein "are the fraudulent transferrees, so far as appears from a list of the stockholders furnished by the said Webb to your orators, and taken from the books of said Company," while the list is not produced and filed as an exhibit with the bill. This list is in no way material to the granting of the injunction. In the case of *Campbell & Voss vs. Poultney, Ellicott & Co.*, 6 *G. & J.*, 94, the names of the fraudulent transferrees were not set out, yet the injunction as granted by the County Court was sustained. The foundation of the equity of the complainants in this bill is in the transfer colorably and without consideration of the

stock of the Company, with the fraudulent intent of
evading the charter of the Company, and of controlling
thereby an election for directors. The parties named are
only stated to be stockholders as appears by the list fur-
nished, but it is not charged that the list furnishes any
proof of the fraudulent transfer. If they are not stock-
holders, they are not injured by the injunction; and if they
are stockholders, the fraudulent transfer of the stock to
them is matter of proof upon the final hearing. The
cases cited by the appellants are materially different from
this. In each of them, the paper, which was not exhib-
ited with the bill, went to the foundation of the applica-
tion for an injunction. In the present case, the list is but
a copy, from the books of the Company, of the names of
certain alleged stockholders, and cannot be regarded as
evidence proper to sustain any of the important averments
of the bill. Had any allusion to it been altogether
omitted, the bill would have been as perfect as it is in its
present form. There could therefore have been no reason
or necessity for filing it as an exhibit.

The Baltimore and Liberty Turnpike Company was
chartered in 1860 by a special Act of the Legislature, (ch.
274,) and by the fourth section of its charter, as before
stated, it is provided, that "at all elections, each stock-
holder shall be entitled to one vote for each share of stock
held by him, not exceeding twenty votes in all." This
section, which is the foundation of the present bill, it is
now contended by the appellants, has been repealed by
section 53 of the Act of 1868, ch. 471, known as the Gen-
eral Corporation Law, which provides, that "in all cor-
porations, in which there are stockholders, all elections
shall be by ballot, and each stockholder shall be entitled
to as many votes as he owns shares of stock in said cor-
poration." The power of the Legislature to modify the
charter of this Company is not contested, but it is denied
that this has been done by the section last referred to.

The authorities cited by the appellants fully sustained the position, of which there can now be no doubt, that the Courts will hold a law to be repealed by a subsequent law, without any express clause of repeal, where the two provisions are so repugnant that they cannot stand together. If, however, they can stand together, there is no repeal by implication. Upon referring to section 216 of the Act of 1868, we think it very clear that the 53rd section has no application to the 4th section of the charter of this Company. That section, (216 *of Act of* 1868,) provides, that "all corporations heretofore formed under the general laws of this State, relating to corporations, or *under any special law*, are hereby declared to be entitled to the benefit of and subject to all the regulations in this Article contained for the government of the corporation herein referred to, *so far as the same be applicable to said several corporations heretofore formed as aforesaid.*" Under the provisions of this section, the doctrine of repugnancy cannot be applied to the case before us, for if the 53rd section is inapplicable to any corporation formed before the Act of 1868, by the express terms of the section just quoted, its provisions are not to be regarded as having any reference to it. By this construction the two sections in question can stand together, and the 4th section of the charter of this Company must be held to be still in force and binding upon its stockholders.

The allegations in the bill in this case are similar to those in the case of *Campbell & Voss vs. Poultney, Ellicott & Co., et al.,* 6 *G. & J.,* 94. In that case, as in this, the bill charged that transfers of stock had been colorably made for the fraudulent purpose of increasing the number of votes in violation of the provisions of the charter of the Company, and asked for an injunction to restrain the fraudulent transferees of the stock from voting at an election shortly thereafter to be held. The Court held, that the facts stated in the bill were "a violation of the

principles and spirit of the charter, and if carried into effect would be a practical fraud upon the appellants, and in derogation of their chartered rights, for the protection of which an injunction was the appropriate remedy." In this view we concur; and think the Court below properly granted the injunction in this case.

Another objection taken by the appellants will be disposed of in a few words. It is contended that sections 8, 9, 10 and 11 of the Act of 1868, give to the appellees a full and adequate remedy at law. These sections do not provide any remedy in a Court of law. They require certain things to be done in regard to the canvassing of votes at an approaching election, the administration of an oath to the elector by the judges of such election, and designate the form of the oath to be taken by a person voting stock owned by a corporation, and the mode of voting by proxy. Although these proceedings are under authority of law and are intended as safe-guards to promote a fair election, they do not constitute such a remedy at law as ousts the jurisdiction of a Court of Equity. "A full and adequate remedy at law" to accomplish this must be a remedy in a Court of Law.

*Order granting injunction affirmed,*
*and case remanded*
*for further proceedings.*

(Decided 2nd July, 1873.)