# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 20, 1897.

JOHN C. SIMERING, ET AL.,
VS.
SUPREME LODGE, ORDER OF GOLDEN CHAIN.

*A. C. Trippe* and *Isidor Rayner* for plaintiffs.

*John P. Poe* for defendants.

DENNIS, J.—

Two questions are presented in this case:

1st. Does the Act of 1896, Chapter 331, apply to the defendant corporation, and is it sufficiently definite to be enforced? and—

2nd. Has equity jurisdiction to grant relief?

As to the first:

The defendant corporation is indisputably "a fraternal beneficiary association"; and as by its express terms the Act of 1896, Chapter 331, is made to apply to all such associations, it is difficult to see how it should be excluded from the operation of that Act.

The elaborate argument set forth in the answer, that because the bill as originally introduced, did not contain the words "life-members"; that therefore the act as passed had no application to such associations as had life-members, is of no avail when we find the act, as finally passed, using words which necessarily embrace associations containing life-members equally with those without them; in other words, the broadening of the terms of the act cannot be construed as meaning to exclude from its operation, a class specifically named in the act as first introduced, when those terms necessarily include such class.

Nor do I find any such ambiquity or uncertainty in the provisions of the act as to render it meaningless and incapable of enforcement. The point relied on to support this proposition is, as stated in the brief of the defendant's counsel, that "the act is void for uncertainty, inasmuch as it does not contain within itself the unit of representation, or state the source from which it is to be ascerttained." But the plain words of the act are that "the number of members that is necessary to secure *one* representative shall be the *unit* of representation, and the number of times the membership in any State is greater than this unit of representation, is the number of members the State is entitled to in the supreme body." Of course, to find the unit of representation, the act contemplated that we should look to the constitutions of the several orders, as there is no other place to look.

Under the constitution of the defendant, the number of members to secure *one* representative in the supreme lodge is 500; now why should the provision of the act be defeated, when we thus find the *unit* specifically provided for, because the constitution further provides that 1,500 members entitle the State to two representatives? The *unit* of representation has been in no way changed by this additional provision; the *unit*, that in the language of the act, is "necessary to secure *one* representative" remains the same, although a graduated scale of representation may be provided for afterwards, to keep pace with the increasing growth of the association.

As to the second point:

Briefly stated, the theory of the present bill is that the former officers of this corporation, constituting the Supreme Lodge, at a meeting in Atlanta in May, 1896, for the purpose of electing a new Supreme Lodge, refused admission to certain electors from this State, chosen in pursuance of and accordance with the Act of 1896, Ch. 331, re-elected themselves to the chief offices of the association and now claim to exercise exclusive control over the powers and franchises of the corporation by virtue of such re-election.

If the Act of 1896 applies to this corporation, as I hold it does, the present officers were not a properly qualified body to hold an election; they had no right to exclude from participation in the election, the delegates, properly qualified from this State, chosen in accordance with the Act of the Legislature; and, in claiming to control the franchises, and exercise the powers of the defendant corporation by virtue of an election plainly in defiance of the Act of the Legislature, they are simply usurpers.

Primarily, it may be remarked that if the Court has no jurisdiction to interfere in such a case, then the plaintiffs and all other members of the association are wholly without remedy. It would be folly for them to seek redress from the Supreme Lodge—the very body which has committed the wrong, and still continues to justify it. No mandamus would be available, because the plaintiffs do not seek to obtain a title to any office; it is in no sense a contest between opposing sets of claimants demanding the same office, in which case a mandamus would be the proper remedy; and no other way has been suggested, except by mandamus, by which the plaintiff's rights can be determined by a proceeding at law. This equity, under such circumstances, has jurisdiction, seems clear both upon principle and authority. It is not a case of an attempt to interfere with the internal disputes between shareholders of a corporation about matters which must necessarily be left to be determined by the majority; but it is a case where the governing body are abusing their powers, by action, *ultra vires*, and in defiance of the statute, by reason of which other shareholders are wronged; and in such cases equity will always grant relief to the complaining shareholders.

The leading English case of McDougal vs. Gardner, 1 L. R. (Ch. Div.) 13, is conclusive on this point, and that case has been followed by the Supreme Court in Hawes vs. Water Co., 104 U. S. 460, and our own Court of Appeals in Shaw vs. Davis, 78 Md. 308; and in both McDougal vs. Gardner and Hawes vs. Water Co., the case of Mozley vs. Alston, 11 Jurist 317, so much relied upon by the counsel for the defendants in this case, is considered and discriminated, and held not to interfere with the principle above announced.

To the same effect are the cases of Campbell vs. Poultney, 6 G. and J. 94, Webb vs. Ridgely, 38 Md. 364, and Busey vs. Hooper, 35 Md. 26. In Campbell vs. Poultney, Judge Buchanan says "that the facts are a violation of the principles and spirit of the charter, and if carried into effect would be a practical fraud upon the appellants and in derogation of their chartered rights, for the protection of which an injunction was the appropriate remedy." In this case, the sole effort is to prevent a governing body from exercising the franchises of a corporation, which they have seized upon in flagrant violation of the terms of the statute, by excluding properly qualified electors especially provided for by the statute, and by virtue of such exclusion re-electing themselves and claiming the right to thus perpetuate their own power indefinitely. To characterize it mildly, such action is clearly *ultra vires*, and comes within the well settled preventive power of a Court of Equity.

Nor is the Insurance Commissioner the proper party plaintiff in a suit of this character. It is not a suit to close up the business of the corporation, or one with which that officer has any concern. The Court of Appeals has made perfectly clear the distinction between a case of this character and one where the commissioner is the proper party in Barton vs. The International Fraternal Alliance ("Law Record," January 1st, 1897), where it says: "Nor must we be understood as implying that if the officers are guilty of fraud or misconduct, by which the rights of parties are injuriously affected, it is not within the power of a Court of Equity to enjoin or otherwise decree, so that justice may be substantially done between the parties; it is only as we have stated, for the causes set out in the Act, that it cannot grant an injunction restraining the corporation from doing business, except upon the application of the Insurance Commissioner." This case comes directly within the lines of the distinction they draw.