(Decided June 30th, 1898.)

---

## SUPREME LODGE, ORDER OF THE GOLDEN CHAIN ET AL. *vs.* JOHN C. SIMERING ET AL.

*Corporations — Benefit Societies — Officers Not Legally Elected—Improper Exclusion of Representatives Entitled to Vote—Injunction—Representation in Fraternal Societies—Act 1896, Ch. 331.*

When persons who are duly elected representatives in the governing body of a beneficial association are excluded from the right to vote by the existing officers, equity has jurisdiction to restrain such exclusion.

Equity has no jurisdiction to remove officers of a corporation upon the ground that they were not legally elected or appointed, or to prohibit such officers from exercising the functions of the offices of which they are in possession.

The Act of 1896, ch. 331, provides that in the supreme govern-
ing body of every fraternal beneficial association, no member
shall be entitled to vote unless elected a representative by
the chapter, etc., and that the number of members necessary
to secure one representative shall be the unit of representa-
tion and the number of times the membership in any State
is greater than this unit of representation is the number of
representatives which the State is entitled to in the supreme
body. It is also provided that every such association shall
have a representative form of government. Defendant is a
beneficial association, incorporated under the laws of this
State, and under its constitution the members in this State
were entitled to only two representatives in the Supreme
Lodge. Under the Act of 1896, if applicable, these members
would be entitled to eight representatives. At the regular
biennial meeting of the Supreme Lodge, after the passage
of the Act, representatives from this. and other States, elected
under the Act, were excluded, and officers of the association
were elected in the former manner and in part by persons
who were not elected as representatives. Upon a bill to
restrain the officers so elected from exercising the power of
their offices, *Held:*

1st.   That the Act of 1896 is applicable to the defendant asso-
ciation.

2d.   That since the constitution of the defendant provides that
there shall be one representative in the Supreme Lodge for
the first five hundred members, that constitutes the unit of
representation, and there being four thousand members in
this State, they were entitled under the act to eight represen-
tatives, and not merely to two, as provided by the consti-
tution.

3d.   That the action of the defendant in excluding the eight
representatives from the right to vote at the meeting of the
Supreme Lodge was illegal.

4th.   That Equity has no jurisdiction apart from statute to re-
move the officers elected at that meeting although illegally
elected, or to restrain them by injunction from exercising
the powers of their offices.

Appeal from a decree of the Circuit Court of Baltimore City (DENNIS, J.). The decree provided, " that the proceedings of the Supreme Lodge of the defendant corporation—its session at Atlanta, Georgia, in May, 1896—in refusing the complainants admission to said session, and denying them the right to vote in accordance with the Act of 1896, chapter 331, were contrary to law and void, and that the defendants, claiming to act as officers of the Supreme Lodge, Order of the Golden Chain, by virtue of such election, are hereby restrained and enjoined from exercising any powers claimed by them by virtue of said election, and from excluding any State representatives, properly qualified to vote in accordance with the said Act of 1896, chapter 331, from the right to vote at any of the sessions of the Supreme Lodge."

The cause was argued before MCSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John P. Poe* and *Edgar Allan Poe*, for the appellants.

The whole object of the bill in this case, and the only object, is to test the validity of the election of the individual appellants to their various offices. The authorities are unanimous that a court of equity is without power to decide such a question. The point has been twice before this Court in the cases of *Merrill* v. *The County Commissioners of Garrett County,* 70 Md. 272, and the *School Commissioners* v. *County Commissioners,* 77 Md. 289. In 70 Md. the Court said: " We are not to be understood as deciding that a bill in equity for an injunction is the proper mode of proceeding for the purpose of contesting the validity of the appointment of the appellants or their title to the office of School Commissioners "; and in 77 Md. the language of the Court is as follows: " As there is a complete and adequate remedy at law, a court of equity is debarred from determining the title to an office disputed between conflicting claimants." See also *Thompson on Corporations,* sec. 764; *Johnston* v. *Jones,* 23 N. J. Eq. 216; *Nathan*

v. *Tompkins*, 84 Ala. 613; *Mosely* v. *Alston*, 1 Phillips
Ch.; *Hughes* v. *Parker*, 20 N. H. 58; *Neal* v. *Hill*, 16
Cal. 145.

A Court of Equity has no authority to issue an in-
junction, *indefinitely* suspending the officers of a corpor-
ation from exercising their functions, for in this way it
would be able to accomplish indirectly what it could
not do directly, viz., the removal of the officers. *School
Commissioners* v. *County Commissioners*, 77 Md. 290,
where the Court say: " If we were to express an opinion
in this case as to which of the Boards was the lawful
Board, we have not the power to give effect to it, by
putting either Board in possession of the office." *Thomp-
son on Corporations*, sec. 826; *Griffin* v. *St. Louis, etc.
Asso.*, 4 Mo. App. 595.

The appellees have a complete and adequate remedy
at law. They should have proceeded by mandamus.
It is no answer for them to say, that this is not a con-
troversy between rival claimants to office. In this State,
mandamus is a very far-reaching and comprehensive
remedy. In *Hawkins* v. *State*, 81 Md. 300, our Court
decided that an information in the nature of a *quo war-
ranto* had become obsolete in Maryland, and that it had
been superseded by the more effective remedy of man-
damus. What would otherwise, therefore, be a subject
of an information in the nature of a *quo warranto* is now
to be accomplished by means of mandamus. The au-
thorities state, that an information in the nature of a
*quo warranto* may be granted to inquire into the election
of an officer of a corporation, when moved for by any
person interested in or injured by such election. *High
on Extraordinary Legal Remedies*, sec. 658; *Clark on Cor-
porations*, 244. Therefore, in Maryland, mandamus is
available to the appellees, for the purpose of determin-
ing the validity *vel non* of the election of the appellants.

The bill on its face fails to make out a case entitling
the appellees to relief. It shows that the six plaintiffs
and two others were elected delegates, and were denied
admission to the Supreme Lodge, Order of the Golden
Chain, during its session at Atlanta, in May, 1896, but

it does not allege that if they had been admitted, differ-
ent officers from those actually elected would have been
elected, and that the various proceedings of the said
Lodge would have been different.   The bill also fails
to allege that in consequence of the exclusion of the said
eight rejected delegates there was no quorum present at
the meeting to legally and validly transact business, and
hence that the business actually transacted was illegal
and void.   On the contrary, the bill admits that the
meeting of the Supreme Lodge was properly called,
and that all who, it is alleged, were actually in attendance
were legally entitled to be present, the only ground of
complaint being that eight delegates who were legally
entitled to be present were denied admittance.  And
lastly, there is no allegation that any persons voted who
were not entitled to vote, and that the officers elected
were elected by illegal votes.

Furthermore, even if the proceedings of the Supreme
Lodge at Atlanta in May, 1896, were invalid, an injunc-
tion could not properly issue against the present officers
of the appellant order restraining them from acting as
such.   The men who hold office now are the same men
who held office before the meeting of the Supreme
Lodge, and they hold the same offices respectively, ex-
cept one, so that assuming that they may not have been
validly re-elected in May, 1896, they at any rate hold
over until their successors are duly and lawfully chosen,
and are, therefore, officers not only *de facto* but *de jure*,
and as such, liable to be restrained by a Court of Equity
only upon allegation and proof of fraud, mismanage-
ment, misappropriation and misapplication of the funds
of the order and the like, of which charges there is not
one particle of evidence here in this case.

*Isidor Rayner* and *A. C. Trippe*, for the appellees.

In this case the Court is called upon to deal with a
very plain proposition upon the part of the appellees,
and with a defence on the part of the appellant that is
not meritorious, but consists entirely of artificial objec-
tions to the enforcement of a salutary enactment, passed

by the General Assembly of 1896.  This law was passed to remedy a great evil that had grown up in the formation of a large number of fraternal orders and in the conduct of their affairs.  The promoters of these orders generally adopted a plan of incorporation which not only gave them supreme and absolute control over the entire membership of their subordinate lodges, but which invested them with the power to elect and re-elect themselves during life to all the salaried offices in the order.  The method by which this device was carried into practical operation was as follows:  A few persons assembled together and framed a constitution, ordaining themselves a supreme body, designating themselves as life members of this supreme body, conferring upon themselves the right, from session to session, of electing all officers of the supreme body, and the power to vote themselves such salaries as they deemed proper for the performance of such duties as they reposed in themselves.  In these constitutions they called themselves life members, which was an entirely proper name, because the avowed object of the plan upon their part was to remain in office during life, and not only receive the emoluments appertaining to the various mysterious functions that they performed, but to handle and distribute the large revenues which they received through the contributions of the subordinate lodges.  As the result of this operation the subordinate lodges, generally consisting of thousands of members—in the present instance of ten thousand members—were deprived of all voice in the management of their affairs and became subject to the arbitrary domination of persons who, in defiance of the wishes of the entire membership of the body whom they represented, continued themselves in well-salaried places, in pursuance of this plan adopted by them for their own benefit and aggrandizement.  The lodges were powerless to interfere with them, although they contributed the whole of the money and furnished all of the revenues necessary for the expenses of the order.  These supreme officers, calling themselves supreme commanders, vice-commanders, prelates, guides

and guardians, always took good care, when they organized these orders, to provide for such a small representation upon the part of the lodges, in the Supreme Lodge, that when the conventions assembled, and a vote was taken for officers, the commanders and the prelates and the guides and the guardians always outnumbered the representatives of the lodges, and thus, through the despotic will of a self-constituted majority, they continued absolutely to control these fraternal associations, ostensibly organized for benevolent purposes and for the mutual benefit of the members that supported them. Time and time again the Courts were called upon to deprive these self-elected supreme officers of the powers that they had usurped, but found themselves unable to do so in every case in which the forms of law had been complied with. The Courts have, however, severely criticised and condemned this method of procedure, whenever controversies have arisen between these supreme officers and their *cestui que trusts*, the subordinate lodges.

Equity has jurisdiction to grant the relief asked for in this case. *McDougal* v. *Gardner*, L. R. 1 Ch. Div. 13; *Hawes* v. *Oakland*, 104 U. S. 460; 17 *Am. & E. Ency. of Law,* 52, 53; *Campbell* v. *Poultney*, 6 G. & J. 94; *Webb* v. *Ridgely*, 38 Md. 364; *Busey* v. *Hooper*, 35 Md. 26; *Shaw* v. *Davis*, 78 Md. 308.

BOYD, J., delivered the opinion of the Court.

The Supreme Lodge, Order of the Golden Chain, of Baltimore City, one of the appellants, was incorporated in this State. Constitutions and by-laws were adopted for the government of the supreme and subordinate lodges of the order. Under the constitution the Maryland members of the association were only entitled to two representatives in the Supreme Lodge, but in 1896 the Legislature passed an Act, known as Chapter 331 of the Laws of that year, which the appellees claim entitles them to a representation of eight. The appellants contend that the Act is not applicable to this association and is void for uncertainty. The Supreme Lodge meets

biennially, and in May, 1896, met at Atlanta, Georgia. Eight persons, including the appellees, claimed to be the regularly-elected representatives from this State, and demanded admission to the sessions of the Supreme Lodge held at Atlanta, but were refused on the ground that Maryland was only entitled to two representatives, which number the Supreme Lodge offered to admit, but that offer was not accepted. The meetings, at which were the officers of the Supreme Lodge, several past supreme commanders and one representative from each of the States of Virginia, Pennsylvania, Georgia and South Carolina, as well as one from New York, who was also an officer, lasted for several days, and on the last day the officers were elected by them—fifteen out of the twenty-three persons present being elected to office. Six of the representatives from Maryland shortly after their return filed this bill, and afterwards another was made a party complainant. The bill alleges that the eight representatives were denied admittance to the Supreme Lodge in defiance of the laws of this State, and that the States of Georgia and Virginia were likewise denied the representation they were entitled to, and that the acts of the Supreme Lodge were illegal and void.

The Court below decreed that the proceedings at the sessions at Atlanta, in refusing the complainants admission and denying them the right to vote in accordance with the Act of 1896, were contrary to law and void, and restrained and enjoined the defendants, claiming to act as officers under that election, from exercising any powers claimed by them, by virtue of said election, and from excluding any State representatives properly qualified, in accordance with the Act of 1896, from the right to vote at any of the sessions of the Supreme Lodge.

The appellants contend that a Court of Equity is without jurisdiction to grant the relief given and that the Act of 1896 is void, but, if valid, does not apply to the defendant corporation. There was no fraud proven, except in so far as it may be inferred from the conduct of the members of the Supreme Lodge in excluding the

representatives and electing themselves to the offices. Amongst other prayers in the bill was one for the appointment of a receiver *pendente lite*, but that was abandoned.

When the question of jurisdiction is presented, we would ordinarily dispose of that before considering the other points. But inasmuch as this decree not only enjoins the individual defendants from discharging the duties of their several offices, to which they claim to have been elected at the meeting in May, 1896, but also from excluding any State representatives, properly qualified under the Act of 1896, from the right to vote at any of the sessions of the Supreme Lodge, the jurisdiction of the Court must be considered with reference to the two branches of the injunction thus granted, as the one is not necessarily disposed of by deciding the other. We will, therefore, first determine whether the Act of 1896 is open to the objections urged by the appellants.

It is conceded that the appellant corporation is " a fraternal beneficiary association " and subject to the provisions of ch. 295 of the Laws of 1894, which added Sections 143 E to 143 R, inclusive, to Art. 23 of the Code. The Act now before us added a section to be known as 143 E 1 to follow 143 E. Although it does not very clearly express all that it is evidently intended for, so far as the matters before us are involved, its meaning is sufficiently plain. Its primary object undoubtedly was to give subordinate organizations of such associations larger representations in the supreme bodies. By the express terms of section 143 E every fraternal beneficiary association is required to have a representative form of government, and by the Act of 1896, any association of the description set forth in section 143 E was authorized to continue business, provided it complied with that Act (and other requirements of the laws of this State) in the supreme body, composed of State council, conclave, lodge, chapter or district representatives, who are elected by the members of the association, " and others to the number of one-fourth or more of the entire membership of the supreme

body who are not so elected as representatives." From Art. IV of the constitution we find that the Supreme Lodge of this association is composed of State represen- tatives and other persons consisting of its officers, the chairman of the advisory board, past supreme com- manders and the originators and members of the Su- preme Lodge at the date of institution who continue in good standing in the order. Those who are not State representatives comprise more than one-fourth of the entire membership of the Supreme Lodge, and hence it would seem that this association is within the very letter of the law. It is urged at length in the answer that it was excluded from the effects of it by reason of certain proceedings in the Legislature when the bill was pend- ing, but as the law, as passed, uses terms sufficiently com- prehensive to include the Supreme Lodge of the defend- ant without in any way exempting it, we are not called upon to examine the terms of the bill as originally intro- duced or the proceedings thereunder, but must construe the one that became a law. It is also contended that this Act does not change the constitution of the defend- ant association. It provides that " no member is quali- fied to vote unless he is a State, council, conclave, lodge, chapter or district representative, elected by the mem- bers or their duly accredited delegates, and in comput- ing the number of representatives to which a State or district is entitled in such supreme body, the number of members that is necessary to secure one representative shall be considered the unit of representation and the number of times the membership in any State is greater than this unit of representation is the number of repre- sentatives which the State is entitled to in the supreme body." The constitution of the defendant provides that each State is entitled to representatives in the supreme lodge as follows: " for the first 500 members one repre- sentative; for the first 1,500 members, two representa- tives; for the first 4,500 members three representatives," and for every five thousand members in excess of forty- five hundred one additional representative. It is there- fore argued that there is no fixed unit and no number

that can properly be called such unit.    But the language
of the statute is " *the number of members that is necessary
to secure one representative shall be considered the unit of
representation.*"    There can be no question as to what
number was necessary under this constitution to *secure
one* representative, and that number (500 in this associa-
tion) is the unit of representation or basis of calculation.
That unit is the divisor, the number of members in the
State the dividend, and the quotient (excluding fractions)
will be the number of representatives the State is entitled
to.    Nor is there any difficulty in ascertaining the source
from which such unit can be determined.    These asso-
ciations are required by law to have " a representative
form of government," and if the charters do not pre-
scribe the basis of representation the constitutions or
by-laws should do so..    The statute leaves the several
associations to fix the number necessary for one repre-
sentative, but when that is done the law determines the
whole number for each State or district, according to
the total membership in such State or district.    Being,
then, of opinion that the Act of 1896 does apply to the
defendant association, and it being shown that there are
four thousand members in Maryland, it follows that they
were entitled to eight representatives in the Supreme
Lodge and not two, as contended by the appellants.
The members of the Supreme Lodge not only did not
admit the eight representatives as required by the stat-
ute, but they totally disregarded it and elected fifteen .of
their own number to office.    This was contrary to the
express provision of the law that provides that " no
member is qualified to vote unless he is a  .  .  .  represen-
tative elected by the members or their duly accredited
delegates."    So far as the proceedings of the sessions at
Atlanta show there was apparently not even a quorum,
for this statute says " a majority of the *elected represen-
tatives* shall constitute a quorum."    Unless the self-
constituted members of the Supreme Lodge are to have
a monopoly of the offices and an unlimited control of the
association, it would seem that there must and ought to
be some remedy for the members.    The question then

is whether the appellees have sought such as the law will afford them.

That a Court of Equity has power to enjoin the individual defendants, who are members of the Supreme Lodge, from excluding any properly qualified State representatives from the right to vote at any sessions of the Supreme Lodge we have no doubt. They hold the offices of supreme commander, vice supreme commander, past supreme commander, supreme secretary, supreme treasurer, supreme medical examiner and chairman of the advisory board, which are the principal offices of the association. All of them were present at the meeting in Atlanta and took part in the proceedings, refusing to admit the representatives from Maryland, Virginia and Georgia, in accordance with the Act of 1896, and by their answer still deny that these members have the right of representation, which we have determined they have. The appellees are not seeking the aid of a Court of Equity to place them in office. They have not been elected to such offices and do not claim them, but as members and State representatives of the association, they have the right to the aid of a Court of Equity to prohibit these officers, who have thus refused and still refuse to permit those entitled to take part in the deliberations and acts of this important body, from excluding them from the right to vote. This branch of the case is clearly within the meaning and reasoning of the decisions in *Campbell* v. *Poultney*, 6 G. & J. 94; *Busey* v. *Hooper*, 35 Md. 15, and *Webb* v. *Ridgely*, 38 Md. 364. It was useless for the appellees to make further appeal for relief to the Supreme Lodge, and, although ordinarily the rights and interests of a corporation must be asserted by the corporation itself, yet stockholders or members, when there is no stock, can proceed under such circumstances as these against those in control of the corporation, which the members of the Supreme Lodge are, in this association. Many cases could be cited to sustain a proceeding of this character under such circumstances as we have related, but it is not necessary to refer to those outside of this State, as our own cases are suffi-

cient.   See, in addition to those above cited, *Davis* v. *Gemmell*, 70 Md. 356; *Davis* v. *Shaw*, 78 Md. 316.   And in *Mason* v. *Supreme Council etc.*, 77 Md. 486, it was said: " If the officers of the order should be guilty of misconduct, fraud or mismanagement, a Court of Equity has full power to restrain and enjoin them."   Whatever the motives of these individual defendants were, their action resulted in not only excluding those that were entitled to be in the Supreme Lodge, but in securing for themselves control over the association and lucrative positions, which they may not have had if the representatives elected by the members had been permitted to vote.

Nor do we think that the Act of 1894, chapter 295, in anywise interferes with the right of the appellees to this part of the decree.   What is said of that Act in the case of *Barton* v. *Fraternal Alliance*, 85 Md. 14, makes it unnecessary for us to discuss it in this connection, as its meaning and scope are there so clearly stated. There may be some question whether this branch of the injunction that was decreed is embraced in the prayer for that writ, but if there be any defect in that respect it is cured by section 177 of Art. 16, of the Code, as construed in the case of *County Commissioners* v. *School Commissioners*, 77 Md. 291.   We are therefore of the opinion that the Court had jurisdiction to pass the portion of the decree we have been considering, and to that extent, it must be affirmed.

But it was also decreed " that the defendants claiming to act as officers of the Supreme Lodge, Order of the Golden Chain, by virtue of such election, are hereby restrained and enjoined from exercising any powers claimed by them by virtue of said election."   That presents the question in a different light from what we have been discussing.   The practical effect of that part of the decree is the removal of those defendants from the offices to which they claim they were elected.   Whilst it is undoubtedly true that a Court of Equity has power to enjoin or otherwise decree against officers of a private corporation, guilty of fraud, misconduct, mismanagement or some act that is *ultra vires,* or that would seri-

ously affect the rights of the stockholders or members, we have, after a very diligent search, failed to find any authority that will justify it in not only passing on the validity *vel non* of an election of officers but in removing them, without some special or statutory authority.    It is true that it is held that, in proceedings over which equity has jurisdiction for some other purpose, if the right to an office or the regularity of an election must be decided in order to give the relief which equity can properly afford, the Court has the power to inquire into and determine the validity of the election for the purposes of the suit.    Such, for example, are *Johnston* v. *Jones*, 23 N. J. Eq. 216, and *Mech. Nat. Bank.* v. *Burnet Mfg. Co.*, 32 N. J. Eq. 236, and it might be said we have practically done that in the other branch of this case. Even in that class of cases it is held that a Court of Equity cannot go further and remove an officer from an office of which he is in possession or declare the office forfeited.    But in this branch of this case, as presented to us by the record, there is no other cause shown for a Court of Equity to interfere, but the controversy is purely and simply whether it can remove officers, declared elected, in a proceeding instituted for that purpose and not arising incidentally in a matter over which equity admittedly has control.

In 1 *Thompson on Corporations*, section 754, it is said, " a Court of Equity has no authority to determine the validity of an election of the officers of a private corporation and pronounce judgment of amotion.    The title of directors who are in office under color of an election and who are, at most, irregularly chosen, cannot be inquired into in a suit in equity instituted to restrain them from exercising the functions of their offices upon the ground of the irregularity in their election."    To the same effect are 17 *Ency. of Law*, 52; *Johnston* v. *Jones, supra*; *Mosely* v. *Alston*, 1 Phil. Ch. 790; *Hughes* v. *Parker*, 20 N. H. 58.    In *High on Injunctions* (1st Ed.), section 774, it is said: " Nor will a Court of Equity at the suit of stockholders of a corporation restrain its officers from the exercise of their functions, since such restraint would

be equivalent to removal from office, and over such a subject equity has no jurisdiction." See also 3rd edition of the same work, section 1235, where the subject is more fully discussed. None of the Maryland cases cited go to the extent we are asked to go in this case. It is true they have sustained the right of stockholders to enjoin proposed illegal or fraudulent methods in the conduct of election of officers, but none of them have decided or intimated that this power can be used after an election, although irregular or even illegal, to remove those declared elected, or, what is equivalent to that, to prohibit them from exercising the powers vested in them by virtue of such election.

It is said in behalf of the appellees that this is not a contest between them and the individual appellants for the offices held by the latter, and hence mandamus, the proceeding authorized in this State, for such purposes, will not answer. But, while it is true they are not asking to be placed in office by this proceeding, they are attempting to oust the appellants or do what in some respects might have worse results, to prevent them from discharging the duties of the several offices. The application for receiver was abandoned, and if these officers be prohibited from acting, it would necessarily, for the time being, if not permanently, stop the regular business of the corporation; for if they cannot act there are no others that can, and unless these offices are filled the affairs of the association cannot be conducted, as contemplated by its constitution and by-laws. The Court has no power to appoint officers in their stead, and to prohibit these from acting would probably result in the ruin of the association, which might be disastrous to the members, especially the older and delicate ones. The supreme treasurer could neither receive nor pay out money and the supreme commander could not even call a special meeting, as provided by the constitution, nor could he discharge any of the other important duties devolved on him, and so with the other officers. It may be said that the old officers would hold over, but most of them are the same persons—the treasurer, secretary,

medical examiner, and chairman of the advisory board were re-elected to the same positions and each of the other officers occupied some position before the election at Atlanta. It would indeed be difficult for any of them, especially those who have been re-elected to the same offices, to act without violating the spirit of the injunction, but if they could, it would be of little service to the appellees if a Court of Equity issued process that would result in the parties who were enjoined being permitted to continue in office by virtue of former elections. There is not even any evidence of mismanagement or misconduct in office on the part of these persons, excepting in so far as their action at the Atlanta meeting reflects on that.

If a Court of Equity assumes jurisdiction, at the instance of a few members of an association in such cases, where will it end? Is every irregularity in the election of officers to be made the foundation for proceeding in equity? It may be true that this is a more serious one than may often occur, but where is the line to be drawn? There is no evidence in this case of any intentional violation of law, for the record shows that the appellants acted under advice of a learned and prominent member of this bar who advised them that the law did not apply. In that opinion we do not concur with him, but there is nothing in the record to justify the inference that either he or the defendants did not act in good faith.

It is also said that the appellees and other members of the association are without remedy if a Court of Equity will not grant this relief. But we cannot agree to that. We have already said they could enjoin the members of the Supreme Lodge from refusing to let them vote, and they might have gone further and enjoined those who were not representatives from voting at all. But they could have adopted still easier and simpler methods. The accredited representatives of the members could have organized, elected officers and then, by application for mandamus, those so elected could have tested the right to the offices, or possibly a mandamus to compel the members of the Supreme

Lodge to admit the representatives would have answered. Other methods suggest themselves which might have been sufficient (although we do.not feel called upon to so determine in this case), such as applying for a mandamus to compel the proper officers of the Supreme Lodge to call another meeting to hold an election on the ground that no valid election had been held.

So, although we are of opinion that the Act of 1896 does apply to the defendant corporation and is valid, we must reverse that part of the decree that enjoins the individual defendants from performing the duties of the offices to which they claim to have been respectively elected. We will not assume that after the law has been construed by this Court these parties will act in defiance of it, but, if they do, there is ample remedy provided for such cases.

> *Decree affirmed in part and reversed in part and cause remanded, each side to pay their own costs.*

(Decided June 30th, 1898.)