## HENRY T. WARD et al. *vs.* FREDERICK SASSCER et al.

*Mandamus—Appeal—Construction of Charter of an Academy.*

Upon appeal from an order granting or refusing a *mandamus* relating to an office, this Court is not restricted to a review of the rulings of the trial Court upon the instructions, but determines, on an inspection of the whole record, whether the order appealed against is correct or not.

The Act of 1835, ch. 204, incorporating the Upper Marlboro Academy as a public school provided that an election for trustees thereof should be held every January and that at such election every citizen of the county entitled to vote for Delegates to the Legislature should be entitled to vote for trustees if he shall have contributed to the building or support of the Academy to the amount of not less than five dollars, or if at the time of the election he shall send a pupil to the Academy. *Held,* that under the plain language of the charter citizens who had at any time prior to an election contributed five dollars to the support of the Academy are entitled to vote for trustees, although they may not send pupils to the school, and that therefore trustees elected by the votes of such persons are entitled to the offices.

Appeal from the Circuit Court for Prince George's County (BRISCOE, C. J., CRANE and MERRICK, JJ.)

The cause was argued before McSHERRY, C. J., FOWLER, BOYD, SCHMUCKER and JONES, JJ.

*A. Bernard Chancellor* and *Joseph K. Roberts*, for the appellants.

*Joseph S. Wilson* (with whom was *T. Van Clagett* on the brief), for the appellees.

JONES, J., delivered the opinion of the Court.

This is an application for a writ of *mandamus*. The petitioners claim to have been elected trustees of the Upper Marlborough Academy, an educational institution incorporated by the Act of 1835, chapter 204, and that the defendants "are illegally and without warrant of law, acting as trustees" of said Academy and are withholding the office from the petitioners ; and have refused upon demand made to deliver to the petitioners the "monies and securities, books, records, papers" and other property of said institution or corporation. The writ is applied for to compel such delivery; and the surrender of the offices of trustees to the petitioners. The propriety of the remedy sought by the petitioners has not been called in question, and if their title to the office of trustees be established this Court has in two recent cases recognized the propriety of *mandamus* to give the redress they seek. *Simering* v. *Golden Chain, &c.*, 88 Md. 291; *Triesler* v. *Wilson*, 89 Md. 170.

The defendants claim to have been elected as, and to rightfully hold the office of, trustees by virtue of such election. The case was tried before the Court below without a jury and that Court dismissed the petition in the case and gave judgment for the defendants. The case has arisen from a difference of view between the respective parties as to a proper construction of the Act of 1835, ch. 204, the charter of the institution involved in the controversy. The preamble of the

Act begins: "Whereas, the citizens of the town of Upper Marlborough and its vicinity, in Prince George's County, have recently organized a public school, and at a public meeting duly elected the following persons as trustees," &c., "and have prayed an Act of incorporation." The first section of the Act incorporates the trustees so elected with the usual general powers. Sec. 2 provides for filling any vacancy that might occur in the Board of Trustees. Sec. 3 as it appears in the original Act and in the record thereof in the Clerk's office of this Court, is as follows: "That on the first Monday of January, in every year, an election shall be held at some convenient place, for the election of seven trustees; and at such elections every free male citizen, who is entitled to vote for Delegates to the Legislature shall be entitled to vote for trustees; Provided that he may have contributed to the building or support of said academy to the amount of not less than five dollars, or at the time of election shall send a pupil or pupils to the said academy; Provided always that nothing herein contained shall be construed to forfeit said charter unless by neglect an election shall not be had within six months after the regularly appointed time." The 4th section gives to the trustees power to furnish fixtures and to appoint a teacher or teachers upon such terms as they may think proper and to make contracts with such teachers. Sec. 5 provides that all money paid annually to Charlotte Hall School on account of Prince George's County should thereafter be paid annually to the Upper Marlborough Academy. In the printed laws the first proviso in sec. 3 is made to read "Provided he may have contributed to the building *a* support of said academy" instead of "contributed to the building *or* support" as it reads in the original. The reading in the printed laws is insensible and evidently a misprint.

The record in the case is in some respects incomplete and is not altogether satisfactory in the presentation of the case. In the case of *Manger* v. *Board of Examiners*, 90 Md. 659, this Court has said: "In an appeal from an order granting or refusing a *mandamus*, when the issues of fact have been de-

termined by the Judge below without the aid of a jury, we are not, as in ordinary appeals from a Court of law, confined to a review of the rulings on questions of law presented by exceptions. In such instances the appellate Court must inquire whether the writ was properly granted or properly refused, after an inspection of the whole record, and is not restricted to an instruction or limited to determining whether that instruction was right or wrong; particularly as no instruction is needed as a basis to bring up for revision the final order when the case is heard below without the intervention of a jury. It is the final order granting or refusing a *mandamus* which an appeal to this Court assails, when the case has been tried by the Judge alone; and whatever the instructions may be, if there are any, the accuracy or inaccuracy of that order is the thing to be determined."

The whole question in the case here is whether the defendants who now hold the offices of trustees were or not elected according to the provisions of section 3 of the charter and there appears on the record sufficient to enable us to determine that question and the propriety of the final order passed by the Court below. From the pleadings and evidence in the case it appears that at the election for trustees of the corporation in question held on the first Monday in January, 1903, there were present thirty-one male citizens entitled to vote for Delegates to the Legislature and all residents of Prince George's County. Twenty-one (21) of these sent pupils to the academy in question, at the time of said election, and ten of them did not send pupils to the academy but prior to the election then being held had paid to the then president of the board of trustees five dollars for the benefit of the academy, intending to comply with the provisions in section 3 of the Act of 1835, to qualify themselves to vote for trustees thereof. Three of these so paid five dollars, each, on the first Monday in January, 1901, three, five dollars, each, on the first Monday of January, 1902, and the remaining four five dollars, each, on the first Monday in January, 1903, before the meeting held on that day for the election. Twelve of those present and

voting at the election on said first Monday in January, 1903, voted for the petitioners and all of these were sending pupils to the academy at the time of the election. Nineteen of those present and voting at said election voted for the defendants. Of these nineteen, nine were at the time sending pupils to the academy and the other ten were those who had each paid five dollars as aforesaid but who did not send pupils to the academy. The defendants were declared elected and now have possession of the books, papers and other property of the corporation. A demand has been made upon them for these by the petitioners and the demand has been refused. The defendants offered a prayer in the Court below which in substance affirmed that upon the state of facts just recited the verdict must be in their favor; and to this special exceptions were filed on behalf of the petitioners. It does not appear that the Court took action on either the prayer or the exceptions, but as has been said by its order dismissed the petition.

The contention upon the part of the petitioners is that by a proper construction of section 3 of the Act of 1835, none but those who were at the time of the election sending pupils to the academy, were qualified to vote at said election; and they having received the votes of a majority of those having this qualification were the duly elected trustees. This is not the reading of the Act. That just as plainly says that those who may have contributed to the building *or support* of the academy may vote as it does that those who are at the time of the election sending pupils to the school shall have the right to vote. It is first provided that *every free male citizen* who is entitled to vote for Delegates shall be entitled to vote for trustees, &c. Then follows the restriction of this general right contained in the proviso. A citizen possessing the general qualification to vote cannot be required to do more than to bring himself within the terms of this restriction to fully qualify himself. It could not be pretended that if a citizen, otherwise qualified to vote for trustees, be able to show that he had contributed as much as five dollars to the building of the academy, would not have the right to vote at the annual

election of these officers. Why? Only because he would then be within the terms of the statute as one who "may have contributed to the building," &c. When the building of the academy was completed the necessity for contributions for that purpose no longer existed. When this necessity ceased another arose which was to have means for the *support* of the Academy and the Legislature saw fit to say, for the encouragement of contributions for that purpose, that any one possessing the general qualifications, prescribed in the Act, to vote at the election of trustees "who may have contributed * * * to the support of said academy to the amount of not less than five dollars" should have the right to vote at such election. The Legislature must be supposed to have had in mind that the need of support was a continuing need and therefore to have intended that encouragement to make contributions to that object should be continuing. Accordingly where at the time of holding an election a citizen otherwise entitled to vote can show that he has before the time of holding the same contributed as much as five dollars to the support of the corporation he not only brings himself within the terms of the Act with reference to the qualification of voters, "may have contributed to the * * * support of said academy" but within what most reasonably appears to have been the intention of the Legislature.

This construction also seems to be in consonance with the spirit and purpose of the Act. As we have seen the academy was incorporated as a public school. It was fostered to some extent by pecuniary aid from the State. The successful and efficient operation of the school was a matter of general public concern and it harmonized with the scheme and purpose of its organization not to restrict but to encourage a general public interest in the institution. This was encouraged by allowing citizens to acquire a voice in its management by a contribution according to a standard which left the contribution to be proportioned to the means, and regulated by the discretion of the citizen—being thus at no time onerous—and at the same time securing something to aid the authorities of the institution

in their duties, of providing fixtures, teachers, &c., imposed upon them by the Act of incorporation. We cannot, of course, now determine with accuracy the motives and conditions which inspired the provisions of the Act in question or the policy with reference to which they were adopted. We can only be governed by these provisions as we find them—giving effect to their plain terms; and if the conditions no longer exist which make these provisions judicious or promotive of the public good there is an obvious and easy remedy by an appeal to the law making power. As we do not think the contention of the petitioners (plaintiffs) in this case is sustained by what appears to us as the necessary construction of the Act of 1835, chapter 204, we must affirm the order appealed from.

*Order affirmed with costs.*

(Decided January 12th, 1904.)