# Illinois Life Insurance Company, Appellee, v. City of Chicago et al., Appellants.

## Gen. No. 31,245.

1. STATUTES—*construction to uphold validity.* The court should adopt that construction, if reasonable, which will uphold the constitutionality of a statute, rather than one which will render the statute unconstitutional.

2. STATUTES—*application of rule requiring construction upholding validity to municipal zoning ordinance.* The rule which requires the adoption, if permissible, of a construction which will render an enactment constitutional rather than one which will render it unconstitutional, applies to a municipal zoning ordinance.

3. MUNICIPAL CORPORATIONS—*nonapplication of Zoning Law to existing lawful property right not derived therefrom.* The provisions of the Zoning Law, Cahill's St. 1925, ch. 24, ¶ 521 *et seq.*, and of a zoning ordinance passed thereunder will not be construed as applying to an existing, lawful property right not derived from such law or ordinance.

4. EVIDENCE—*judicial notice as to customary use of signs on business buildings.* The courts will take judicial notice of the fact that it is customary to use signs on business buildings as part of the business therein conducted.

5. MUNICIPAL CORPORATIONS—*when city without constitutional power to prevent use of sign on building.* Unless it can be said that a sign erected upon a building prior to the enactment of the Illinois Zoning Law, Cahill's St. ch. 24, ¶ 521, is a nuisance *per se*, a city is without constitutional power to prevent its use in connection with such building.

6. NUISANCE—*when sign not deemed nuisance per se.* A bronze sign, securely hung 18 feet from the ground in the portico of a building to show it to be the headquarters of the company owner and used for his business before the passage of the Illinois Zoning Law, Cahill's St. ch. 24, ¶ 521, held not a nuisance *per se*.

7. MUNICIPAL CORPORATIONS—*nonretroactive application of zoning laws or ordinances.* Under the Constitution of the State of Illinois, Art. II, § 2, the owner of a building, using it for lawful commercial business, has a constitutional right to continue that use irrespective of zoning laws or ordinances thereafter passed restricting his district to apartment buildings.

8. MUNICIPAL CORPORATIONS—*property right in office building as including right to use sign, notwithstanding Zoning Law.* The property right in a building used for office headquarters which was acquired be-

fore the passage of the Illinois Zoning Law, Cahill's St. ch. 24, ¶ 521, includes the constitutional right to hang up a sign, not a nuisance *per se,* to show the office headquarters, after the Zoning Law is passed.

9. PROPERTY—*definition of term.* The term property has been defined to include every interest anyone may have in any and everything that is the subject of ownership by man, together with the right to freely possess, use, enjoy and dispose of the same.

10. MUNICIPAL CORPORATIONS—*judicial control over interference with individual property rights by zoning laws and ordinances.* It is the province of the courts to determine when individual property rights may be taken away or limited in the best interest of the public such as by requiring conformance to zoning laws and ordinances.

11. CONSTITUTIONAL LAW—*insufficiency of police power to warrant deprivation of citizen's right to use property for commerce by Zoning Law.* Neither legislative nor municipal authorities, even exercising the whole police power of the State, can deprive a private citizen of his right to use his property for commerce by zoning laws passed after he acquired that right.

12. MUNICIPAL CORPORATIONS—*sign pointing out office headquarters of building owner as permissible nonconforming use under zoning ordinance.* Under the Chicago zoning ordinance, section 14, ¶ (a), permitting continuance of prior nonconforming uses, a sign merely pointing out the office headquarters of the company owner of a building which had been commercially used before the passage of the zoning ordinance is a permissible nonconforming use.

13. MUNICIPAL CORPORATIONS—*when sign hung before passage of zoning ordinance exempt from attack thereunder.* The hanging of a bronze sign, showing office headquarters, from a place on the office building provided before the passage of Chicago zoning ordinance section 14, ¶ (b), forbade the extension of nonconforming uses, is exempt from attack under Zoning Law or ordinance.

14. MUNICIPAL CORPORATIONS—*nonapplicability of zoning ordinance provision against signs in apartment districts to commercial buildings.* Chicago zoning ordinance, section 7, ¶ (a), forbidding other than signs for sale or for rent in apartment districts, does not apply to signs on commercial buildings in apartment districts but only to their use on residence premises therein.

15. MUNICIPAL CORPORATIONS—*nonapplication of zoning ordinance provision forbidding advertising signs in apartment districts to those merely pointing out office headquarters.* Chicago zoning ordinance, section 7, ¶ (b), forbidding billboards or other advertising signs in apartment districts, does not apply to signs merely pointing out office headquarters but only to general advertising signs.

16. MUNICIPAL CORPORATIONS—*when owner of building not required to secure permit before hanging sign on building used for business.*

It is not necessary for the owner of a business building in an apartment district to obtain a permit under section 26 of the Chicago zoning ordinance, requiring a certificate of occupancy, before hanging a sign which is in line with a nonconforming use of the building for business begun before the passage of the ordinance.

17. MUNICIPAL CORPORATIONS—*failure to obtain permit required by zoning ordinance as bar to right to restrain interference with hanging of office sign.* The owner of a building used for business before the Chicago zoning ordinance restricted that district to apartments is not barred of his right to restrain the city's interference with his hanging an office sign by failing to obtain the permit required by section 3 of the ordinance.

18. INJUNCTIONS—*certiorari or injunction as proper remedy to prevent municipal interference with property rights acquired before passage of zoning ordinance.* The writ of certiorari provided by section 3 of the Chicago zoning ordinance to review decisions of the board of appeals in zoning disputes cannot take the place of an injunction to restrain a city's interfering with property rights acquired before the passage of the ordinance, for certiorari is a writ of review not intended to prevent anticipated injuries.

19. COURTS—*when Zoning Law will not be construed as limiting jurisdiction to protect previously existing property rights threatened by enforcement thereof.* The courts will not interpret the Zoning Law, Cahill's St. ch. 24, as prohibiting other legal remedies to one aggrieved thereby, as that would violate section 12 of Article VI of the Illinois State Constitution by depriving circuit courts of their jurisdiction over causes in law and equity, extending to all rights previously enforced thereby, which includes the constitutional right to business use of property acquired before passage of the Zoning Law.

20. EQUITY—*jurisdiction to restrain interference with business use of property acquired prior to adoption of zoning ordinance.* The Chicago zoning ordinance in providing for settling disputes thereunder by a nonjudicial board does not provide any legal remedy for protecting constitutional rights acquired before passage of the ordinance and hence equity will take jurisdiction to restrain the city's illegal effort to interfere with business use of property acquired before the ordinance was passed.

21. COURTS—*nonjudicial status of board provided for by Chicago zoning ordinance.* The mere fact that a nonjudicial board provided by the Chicago zoning ordinance section 3 may exercise judgment in carrying out its ministerial functions does not make it a judicial tribunal.

22. INJUNCTIONS—*want of legal remedy to prevent municipal interference with constitutional property rights acquired before passage of zoning ordinance limiting same.* The only function of the writ of certiorari provided by the Zoning Law, Cahill's St. ch. 24, ¶ 523, is to

review proceedings of the board of appeals therein named to settle zoning disputes, and of the restraining order to stay the board till the courts pass upon its decisions, so that neither provides any legal remedy for restraining the city from interfering with constitutional property uses acquired before the passage of a zoning ordinance limiting such rights.

Appeal by defendants from the Circuit Court of Cook county; the Hon. Ira Ryner, Judge, presiding. Heard in the first division of this court for the first district at the October term, 1926. Affirmed. Opinion filed May 2, 1927.

Francis X. Busch, Corporation Counsel, for appellants; Roy S. Gaskill, Barnet Hodes and W. Arnold Amberg, Assistant Corporation Counsel, of counsel.

Hugh T. Martin and J. T. Border, for appellee.

Mr. Justice Johnston delivered the opinion of the court.

This is an appeal by the defendants, the City of Chicago and others, from a decree in favor of the Illinois Life Insurance Company, the complainant, enjoining perpetually the defendants from removing or in any way interfering with a lantern or sign suspended from the roof of the portico of the main entrance to the building owned and occupied by the complainant and located at No. 1212 Lake Shore Drive, a thoroughfare in the City of Chicago, which location is designated by the Chicago zoning ordinance of the City of Chicago as an "Apartment district."

The cause was heard on the bill, answer, replication and stipulation of facts.

The pertinent facts in the stipulation of facts show: That the complainant is an Illinois corporation engaged in the business of selling life insurance; that in the year 1921 it began the erection of the building in question; that the building "is constructed in the style of a French Chateau, built of Bedford stone, two

Illinois Life Ins. Co. v. Chicago, 244 Ill. App. 185.

stories in height, and with a mansard roof; that it is quite dissimilar to the conventional type of office buildings or buildings used by many other financial institutions; that the wings constituting the north and south parts of the building extend to the Lake Shore Drive lot line; but the front entrance of the building stands back or west of the lot line a distance of about 15 feet; that the front entrance of the said building is through a portico, the roof of which is supported by a row of stone columns''; that about May 1, 1922, before the building was completed, the complainant established its home office in the building and has remained there continuously ever since; that about April 5, 1923, the zoning ordinance was passed; that at the time that the zoning ordinance was passed the building contained the offices of the corporate officers and also the offices of the agency department, loan department, policy issue department, local agents, and a large clerical staff; that the complainant then had in force nearly $160,000,000 of insurance and was writing new business at the rate of about $25,000,000 a year; that the building had been so used for a period of at least 11 months prior to the passage of the zoning ordinance, and that it has so continued to be used to the present time; that the use to which the building is devoted is what is termed in the zoning ordinance a ''non-conforming use'' and is not permitted by the ordinance in an ''Apartment district''; that the portico at the front entrance to the building on Lake Shore Drive was originally designed to carry a sign identifying the building as the home office of the complainant; that no plans, however, showing the sign had ever been submitted to any department of the City of Chicago; that prior to and at the time of the passage of the zoning ordinance, there was no sign of any kind on the building; that there are a large number of policyholders in the City of Chicago and also a large number of other persons, including agents, all of whom from time to

time find it necessary or convenient to call at the building in order to pay premiums upon policy contracts, to make loans, to apply for insurance, or to transact other business; that as such persons were finding it difficult to distinguish the building, the complainant, on July 7, 1924, erected the sign; that the sign consists of a bronze lantern which is about $6\frac{1}{2}$ feet in length, $2\frac{1}{2}$ feet in height, and 8 inches in depth; that the front is of glass upon which appear words in three lines as follows:

"Home Office
Illinois Life Insurance Company
Greatest Illinois Company";

that the letters in the top and third lines do not exceed 3 inches in height; that the letters in the second line do not exceed $5\frac{1}{2}$ inches in height; that the sign is securely suspended by bronze chains from the roof of the portico, being to the west or rear of the two middle columns, and at a distance of about 18 feet from the ground; that there are electric lights inside the sign; that the sign is worth about $2,000; that after the sign was erected the City of Chicago, through its officers, threatened to and were about to tear down the sign forcibly; that the removal of the sign would have caused substantial damage to the business and property of the complainant "in ways and to an extent incapable of definite ascertainment for the purpose of measuring the damages which" the complainant "would have suffered therefrom"; that aside from the disputed applicability of the zoning ordinance the complainant, in erecting the sign, has not violated any of the ordinances of the City of Chicago.

The record contains photographs of the building and of the sign as erected.

Counsel for the defendants contend that the erection of the sign by the complainant constitutes a use that is violative of the zoning ordinance; that the complainant has not obtained a certificate under section 26 of

Illinois Life Ins. Co. v. Chicago, 244 Ill. App. 185.

the ordinance from the commissioner of buildings permitting such use; and that therefore the City of Chicago was authorized to remove the sign.

Section 1 of the Zoning Law, the enabling act of the legislature under which the zoning ordinance was passed (Cahill's St. 1925, ch. 24, ¶ 521), is as follows:

"* * * In all ordinances passed under the authority of this Act, due allowance shall be made for existing conditions, the conservation of property values, the direction of building development to the best advantage of the entire city, village or incorporated town, and the uses to which property is devoted at the time of the enactment of any such ordinance. The powers by this Act given shall not be exercised so as to deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted."

The pertinent parts of the zoning ordinance relating to the contentions of counsel for the defendants are as follows:

"Section 7.  Auxiliary Uses in Residence or Apartment Districts.  (a) Auxiliary uses which do not alter the character of the premises in respect to their use for residential purposes shall be permitted in Residence and Apartment districts.  Auxiliary uses shall include the following * * * :

"Signs advertising the premises for sale or for rent * * *.

"(b) Auxiliary uses shall not include:
* * *

"A billboard, signboard or advertising sign, store, trade, business, garage or stable, except such as are hereinbefore specifically permitted."

"Section 14.  Non-conforming Uses.  (a) A non-conforming use existing at the time of the passage of this ordinance may be continued.

"(b) A non-conforming use shall not be extended, but the extension of a use to any portion of a building

which was arranged or designed for such non-conforming use at the time of the passage of this ordinance shall not be deemed the extension of a non-conforming use. * * *

"(1) For the purposes of this ordinance a use shall be deemed to be changed if changed from a use included in a use class to a use not included in such class."

"Section 26. Certificates of Occupancy. (a) * * * No change or extension of use and no alterations shall be made in a non-conforming use of premises without a certificate of occupancy having first been issued by the Commissioner of Buildings that such change, extension or alteration is in conformity with the provisions of this ordinance."

In the stipulation of facts it is agreed that at the time of the passage of the zoning ordinance the building was devoted to a "non-conforming use" as defined by the ordinance, and was located in a part of the district described in the ordinance as "an Apartment district."

We are of the opinion that in erecting the sign the complainant has not violated any of the provisions of the zoning ordinance.

In our view the facts agreed upon do not bring the act of the complainant within the operation of the zoning ordinance. To construe the zoning ordinance as being applicable to the present state of facts would be, we think, to adopt a construction which would render the ordinance unconstitutional. According to the well-established rule of statutory construction, it is the duty of the court to adopt, if reasonable, a construction of the statute that will uphold the constitutionality of the statute rather than a construction that will render the statute unconstitutional. *People v. McBride,* 234 Ill. 146, 165; *Condon v. City of Chicago,* 249 Ill. 596, 599. It may be stated that the rules for the construction of ordinances passed by a municipality

are the same as for statutes enacted by the legislature. *City of Chicago v. Chicago & Oak Park El. R. Co.,* 261 Ill. 478, 491; *People v. City of Rock Island,* 271 Ill. 412, 430. In our opinion the right to erect the sign was a part of the property right of the business in which the complainant was engaged. It was a right not derived from either the Zoning Law or the zoning ordinance. It was a constitutional right wholly independent of either the Zoning Law or the zoning ordinance. The provisions of section 3 of the Zoning Law forbidding the exercise of any power under the law that would "deprive the owner of any existing property of its use or maintenance for the purpose to which it is then lawfully devoted"; and the provisions of section 14 of the zoning ordinance, permitting the continuance of a nonconforming use, are provisions merely declaratory of the constitutional rights of property owners. The use of the sign in connection with the business of the complainant was a customary use in connection with the business. In the case of *Haskell v. Howard,* 269 Ill. 550, 553, it was held that it was a matter of common observation that manufacturers advertise their products by display signs along railroads and public highways. By analogy, judicial notice may be taken of the fact that it is customary to use signs on buildings devoted to business purposes. Unless it can be said that the sign in question is *per se* a nuisance, we think that it would have been an unconstitutional exercise of power by the city to prevent its use in connection with the complainant's building. In our view the sign is not a nuisance *per se.* On the contrary, we are of the opinion that neither in the design of the sign nor in the place in which it is erected on the building, is there anything to offend the most aesthetic taste.

The complainant's building had been devoted to its present use before the passage of the ordinance. As the use was that of a lawful business and not a business over which a municipality has special regulatory

power, such as a business which is *per se* a nuisance, the complainant had a vested property right under section 2 of Article II of the Constitution of the State of Illinois to continue the use of the building in its present location, irrespective of the passage of the zoning ordinance. Neither by legislative act nor by municipal ordinance could the complainant be deprived of its right under the constitution to continue to conduct its business in its present location. *City of Chicago v. Wells*, 236 Ill. 129, 132; *Jensen v. Wilton E. Wilcox Lumber Co.*, 295 Ill. 294, 300; *Ehrlich v. Chapple*, 311 Ill. 467, 469. And the erection of the sign was part of the property right of the business. The term "property" has been defined to include "every interest anyone may have in any and every thing that is the subject of ownership by man, together with the right to freely possess, use, enjoy and dispose of the same." *Bailey v. People*, 190 Ill. 28, 33. The "right of user" is a part of the property right guaranteed by the constitution. *City of Chicago v. Wells*, 236 Ill. 129, 133. In the case of *Condon v. Village of Forest Park*, 278 Ill. 218, the court said (p. 224): "The owner of property has a constitutional right to make any use of it he desires, so long as he does not endanger or threaten the safety, health, comfort or general welfare of the people." To the same effect are the cases of *People v. City of Chicago*, 280 Ill. 576, 579; *McCray v. City of Chicago*, 292 Ill. 60, 68. This right cannot be wholly taken away or limited by the State except in so far as it may become necessary for individual rights to yield to the higher and greater law of the best interest of the public. *McCray v. City of Chicago*, 292 Ill. 60, 68; *City of Aurora v. Burns*, 319 Ill. 84, 93. "To determine where the rights of the individual end and those of the public begin is a question which must be determined by the courts." *Haller Sign Works v. Physical Culture Training School*, 249 Ill. 436, 440. "The legislature may not, under the guise of protecting the public

interests, arbitrarily interfere with private rights."
*City of Aurora v. Burns,* 319 Ill. 84, 93. In the case of
*Haller Sign Works v. Physical Culture Training
School,* 249 Ill. 436, the court said (p. 443): "The
courts of this country have with great unanimity held
that the police power cannot interfere with private
property rights for purely aesthetic purposes." It has
been said also that even if a municipality is clothed
with the whole police power of the State, it would still
not have the power to deprive a citizen of valuable
property rights under the guise of prohibiting or reg-
ulating some business or occupation that has no tend-
ency whatever to injure the public health or public
morals or to interfere with the general welfare. *Peo-
ple v. City of Chicago,* 261 Ill. 16, 20; *Haskell v. How-
ard,* 269 Ill. 550, 554; *Town of Cortland v. Larson,*
273 Ill. 602, 613.

Since we are of the opinion that the stipulation of
facts does not bring the complainant within the pro-
visions of the zoning ordinance, it follows that the
complainant was under no necessity of obtaining a
certificate of occupancy as required by section 26 of
the zoning ordinance.

We further are of the opinion that even assuming
for the sake of argument that the provisions of the
zoning ordinance apply to the use of the sign, the erec-
tion of the sign was permissible under both paragraph
(a) and paragraph (b) of section 14 of the ordinance.
We think that fairly and reasonably construed para-
graph (a) of section 14 of the zoning ordinance did not
restrict the use of the building to such an extent that
the building should remain precisely as it was when
the zoning ordinance was passed. In our view, when
paragraph (a) of section 14 provided that the non-
conforming use of a building could be continued, it
meant that the building could be used in connection
with the business in such a manner as a building de-
voted to such business was customarily conducted. In

our opinion, the erection of the sign in question on the building of the complainant was one of the uses customarily employed in actually conducting the business which was authorized by paragraph (a) of section 14 to be continued, although it was a business designated by the ordinance as a nonconforming use.

Paragraph (b) of section 14 of the zoning ordinance expressly provides as follows: "A non-conforming use shall not be extended, but the extension of a use to any portion of a building *which was arranged or designed for such non-conforming use* at the time of the passage of this ordinance shall not be deemed the extension of a non-conforming use." In the stipulation of facts it is agreed that "the portico at the front entrance" of the building in question "was originally designed to carry a sign identifying the building as the home office of the" complainant. It follows, we think, that the erection of the sign was, therefore, permissible under paragraph (b) of section 14 of the zoning ordinance.

Further assuming, for the sake of argument, that the zoning ordinance is applicable to the building of the complainant, we think that the provisions of paragraph (a) of section 7 of the zoning ordinance, in regard to auxiliary uses in residence or apartment districts, does not forbid the use of signs on buildings used for commercial purposes. These provisions relate, in our opinion, only to auxiliary uses in respect of premises used for residences or apartments.

The provisions of paragraph (b) of section 7 of the zoning ordinance, which provisions exclude from auxiliary uses billboards, signboards and advertising signs, do not, in our opinion, apply to signs such as the one on the building of the complainant, but refer to billboards, signboards and advertising signs used for general advertising purposes.

According to our interpretation of all of the sections in question of the zoning ordinance, assuming for the

sake of argument that the building of the complainant comes under the provisions of the zoning ordinance, it follows that since the erection of the sign on the building of the complainant was a nonconforming use that was expressly authorized by the zoning ordinance, it was not necessary for the complainant to obtain a certificate of occupancy under section 26 of the zoning ordinance.

Counsel for the defendants further contend that "the remedy provided by section 3 of the Zoning Law is exclusive"; that "where in a special statutory proceeding, one form of review is specifically given, all other forms of review are excluded."

Section 3, Cahill's St. ch. 24, ¶ 523, of the Zoning Law provides as follows:

"All ordinances passed under the terms of this Act shall be enforced by such officer of the city, village or incorporated town as may be designated by ordinance. The regulations by this Act authorized, may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent and in accordance with general or specific rules therein contained. * * *

"Such board of appeals shall hear and decide appeals from and review any order, requirement, decision or determination made by an administrative official charged with the enforcement of any ordinance adopted pursuant to this Act. ·

"It shall also hear and decide all matters referred to it or upon which it is required to pass under any such ordinance. * * * The board of appeals may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination as in its opinion ought to be made in the premises, and to that end shall have all the powers of the officer from whom the appeal is taken. * * *

"Any person or persons, jointly or severally aggrieved by any decision of the board of appeals, or

any officer, department, board or bureau of the municipality, may present to a court of record a petition, duly verified, setting forth that such decision is illegal, in whole or in part, specifying the grounds of the illegality. * * *

"Upon the presentation of such petition, the court may allow a writ of certiorari directed to the board of appeals to review such decision of the board of appeals. * * * The allowance of the writ shall not stay proceedings upon the decision appealed from, but the court may, on application, on notice to the board and on due cause shown, grant a restraining order. * * * The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review. * * *

"All issues in any proceeding under this section shall have preference over all other civil actions and proceedings."

It is obvious that the contention of counsel for the defendants is not relevant to the present controversy, as the complainant is not seeking to review proceedings that were had before the board of appeals of the zoning ordinance. The complainant is asking for original relief. Before the complainant would have been entitled to apply to a court of record for a writ of certiorari to review or for an order to restrain proceedings before the board of appeals of the zoning ordinance, the complainant would have had to institute proceedings before the board of appeals. But the complainant never applied to the commissioner of buildings or any other official of the City of Chicago for a certificate of occupancy to erect the sign, and consequently there were no proceedings had before the board of appeals. We do not think that the complainant lost the right to proceed by injunction in the present suit because it did not apply for a certificate of occupancy under the zoning ordinance. If the complainant had applied for a certificate of occupancy, the complainant thereby would have assumed the in-

congruous position of admitting that the provisions of the zoning ordinance were applicable while contending that they were not applicable. Furthermore, it is clear that a writ of certiorari properly could not have been used by the complainant to perform the function of an injunction independently of proceedings before the board of appeals, as the writ of certiorari is not the appropriate remedy to prevent anticipated wrong or injury. *Glennon v. Burton,* 144 Ill. 551, 553; *Bilsborrow v. Pierce,* 101 Minn. 271, 274; *Gauld v. Board of Sup'rs of City and County of San Francisco,* 122 Cal. 18, 19. The writ of certiorari is a writ of review in which the only judgment to be rendered is that the writ be quashed or that the record of the proceedings be quashed. *Funkhouser v. Coffin,* 301 Ill. 257, 260; *People ex rel. Aeberly v. City of Chicago,* 240 Ill. App. 208, 214.

Furthermore, if the legislature had intended that section 3 of the Zoning Law should be exclusive of all other legal remedies, the Zoning Law to that extent would violate section 12 of Article VI of the Constitution, which confers original jurisdiction on the circuit courts of all causes in law and equity. The rule is firmly established that the legislature is without power to deprive the circuit courts of any part of their original jurisdiction. *White v. City of Ottawa,* 318 Ill. 463, 472; *Stephens v. Chicago, B. & Q. R. Co.,* 303 Ill. 49, 51. It is true that in special statutory proceedings the legislature may confer jurisdiction on any court that it may choose to the exclusion of all others. *White v. City of Ottawa, supra,* p. 472. But a statutory proceeding is one "involving rights and providing remedies which are not of the kind previously enforced either at law or in chancery." *Lavin v. Wells Bros. Co.,* 272 Ill. 609. In the case at bar the rights which the complainant is seeking to protect are not statutory rights created by the Zoning Law. They are not rights which are unknown to law and to equity. They are rights known at law and in equity and rights which

were not created by any statute and which are wholly independent of the Zoning Law. They are rights which come within the original jurisdiction of circuit courts and which the legislature cannot take from the jurisdiction of such courts. The question whether the remedy under the Zoning Law is concurrent or cumulative is another and different question which it is not necessary to decide. If the remedy should be held to be cumulative, the general rule is that the giving of a new remedy by statute in nowise affects the jurisdiction of a court of chancery. *Labadie v. Hewitt,* 85 Ill. 341, 342; *Babcock v. McCamant,* 53 Ill. 214, 218; *McNab v. Heald,* 41 Ill. 326, 330.

Counsel for the defendants further contend that the complainant has a complete and adequate remedy at law, and that, therefore, the complainant has no cause of action in equity.

The provisions of the zoning ordinance which are relied on by counsel for the defendants in connection with section 3 of the Zoning Law are as follows:

"Section 25. Administration. This ordinance shall be enforced by the Commissioner of Buildings. * * *

"Section 26. Certificates of Occupancy. (a) * * * No change or extension of use and no alterations shall be made in a non-conforming use of premises without a certificate of occupancy having first been issued by the Commissioner of Buildings that such change, extension or alteration is in conformity with the provisions of this ordinance."

"Section 28. Board of Appeals. A board of appeals is hereby established. The members of the board of appeals shall be appointed by the Mayor, subject to confirmation by the City Council. The board of appeals shall consist of five members. One of the said members shall be an architect * * *, one shall be a structural engineer * * *, another * * * a builder, and still another * * * a real estate dealer. * * *

"Section 29. Functions of the Board of Appeals. (a) * * * The regulations imposed and the districts created under this ordinance may be varied or amended from time to time by ordinance, but no such variations or amendments shall be made without a hearing before the board of appeals, at which persons interested shall be afforded an opportunity to be heard. * * *

"(c) Variations. Upon application such board of appeals shall have power to review the action of the enforcing officer of the City of Chicago in order to determine whether it is in accordance with the terms of this ordinance. Where in specific cases of applications for permits there are practical difficulties or particular hardship in the way of carrying out the strict letter of the provisions of this ordinance the board of appeals shall have power upon application to recommend variations of or from the original ordinance or amendments thereto."

The remedy at law that is contemplated in equity, when the phrase "adequate remedy at law" is used, is a remedy in a court of law. *Webb v. Ridgely,* 38 Md. 364, 372. The application to a particular case of the equitable doctrine embraced in the phrase "adequate remedy at law" must depend altogether upon the character of the case. *Watson v. Sutherland,* 72 U. S. (5 Wall.) 74, 79; *Mutual Life Ins. Co. of New York v. Pearson,* 114 Fed. 395, 396. In the case at bar it is obvious that the provisions of the zoning ordinance do not furnish an adequate remedy at law or any remedy at law within the meaning of the doctrine of equity. Under the zoning ordinance the board of appeals, which consists of an architect, a structural engineer, a builder and a real estate dealer, is not a judicial tribunal and is not vested with any judicial functions. Judicial power is power "which adjudicates upon and protects the rights and interests of individual citizens and to that end construes and ap-

plies the law.'' *Stolle v. Mitchell,* 309 Ill. 341, 342, 344. Judicial power exists only in the courts. *Edwards v. Dykeman,* 95 Ind. 509, 518. The board of appeals established by the zoning ordinance is merely an administrative body, which has no power whatever to afford such relief to the complainant as would constitute an adequate remedy at law and which would deprive the complainant of any remedies to which the complainant might be entitled in a court of equity. The board of appeals, being an administrative and not a judicial tribunal, has no power to determine the constitutional questions concerning the vested property rights which the complainant is seeking to protect.

In the case of *Webb v. Ridgely,* 38 Md. 364, a question somewhat similar to the one in the case at bar was presented by the contention that an act relating to corporations, referred to as the Act of 1868, furnished an adequate remedy at law to the exclusion of relief in equity. The court said (p. 372):

''It is contended that sections 8, 9, 10 and 11 of the Act of 1868 give to the appellees a full and adequate remedy at law. These sections do not provide any remedy in a court of law. They require certain things to be done in regard to the canvassing of votes at an approaching election, the administration of an oath to the elector by the judges of such election, and designate the form of the oath to be taken by a person voting stock owned by a corporation, and the mode of voting by proxy. Although these proceedings are under authority of law and are intended as safeguards to promote a fair election, they do not constitute such a remedy at law as ousts the jurisdiction of a court of equity. 'A full and adequate remedy at law' to accomplish this must be a remedy in a court of law.''

If the grant of power to the City of Chicago by section 3 of the Zoning Law should be construed as being sufficiently broad to include the right of the board of appeals to exercise judicial functions, section 3 to that extent would be unconstitutional as violative of Ar-

ticle III of the Constitution of the State of Illinois, which divides the powers of government into three departments—legislative, executive and judicial. The mere fact, however, that the board of appeals may exercise judgment as an incident to their ministerial powers would not constitute the board a judicial tribunal. *Stolle v. Mitchell,* 309 Ill. 341, 344.

The fact that section 3 of the Zoning Law provides for the issuance of a writ of certiorari and for a restraining order lends no support to the contention of counsel for the defendants that the complainant has an adequate remedy at law. The only function of the writ of certiorari would be to review proceedings had before the board of appeals of the zoning ordinance, and the office of the restraining order, which would be an auxiliary remedy to the writ of certiorari, would be merely to stay the proceedings of the board of appeals pending the decision of the court in the certiorari proceedings.

In support of their contention that the complainant has a complete and adequate remedy at law, counsel for the defendants principally rely upon the case of *Cann v. City of Chicago,* 241 Ill. App. 21, 27. In that case the complainant was not contending that the zoning ordinance was inapplicable. On the contrary, the complainant had applied for permits to erect a building and was seeking to enjoin the City of Chicago from interfering with the erection of the building in accordance with the permits that had been granted to the complainant, but which subsequently had been revoked. It is apparent that the facts in the case at bar are materially different. The cases of *City of Aurora v. Burns,* 319 Ill. 84, 98, and *Deynzer v. City of Evanston,* 319 Ill. 226, also cited by counsel for the defendants, are not in point.

For the reasons stated the decree of the chancellor is affirmed.

*Affirmed.*

McSURELY, P. J., and MATCHETT, J., concur.