HAWTHORNE BANK OF WHEATON, as Trustee, *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF GLEN ELLYN, Defendant-Appellant.

Second District No. 2—86—0991

Opinion filed April 9, 1987.

William E. Jegen, P.C., of Glen Ellyn, for appellant.

Joseph Michael Williams and Aldo E. Botti, both of Botti, Marinaccio, DeSalvo & Pieper, of Oak Brook, for appellees.

JUSTICE INGLIS delivered the opinion of the court:

This appeal arises from the entry of a temporary restraining order and an order granting preliminary injunctive relief against the vil-

lage of Glen Ellyn (village). The plaintiffs, Hawthorne Bank of Wheaton, as trustee, and Alfred and Elenore Blaszczak, as beneficiaries, filed an action to enjoin the village from erecting a street light in the space occupied by a private canopy which was attached to plaintiffs' building and extended over a public right-of-way. The trial court entered a temporary restraining order, without notice, against the village. The trial court subsequently issued a preliminary injunction, enjoining the village from erecting the streetlight or from otherwise interfering with plaintiffs' canopy. The village appeals from both orders of the trial court.

Plaintiff, Hawthorne Bank of Wheaton, as trustee under trust No. 79—972, is the owner of a building located at 413 Main Street, in the central business district of Glen Ellyn, Illinois. Alfred Blaszczak and Elenore Blaszczak (Blaszczak) are the beneficiaries of the Hawthorne Bank trust.

The building is a 3½-story commercial structure containing four stores and a ballet school. Attached to the front of the building at the entranceway leading to the ballet school is a canopy which extends into the Main Street public right-of-way. The canopy consists of a tubular frame with a canvas cover. The outer end of the canopy is supported by two poles placed on the public sidewalk and located substantially even with the curb. Three signs advertising the ballet school are painted on the canopy cover. The ballet school is operated by Maureen Mylan (Mylan), one of the Blaszczaks' tenants. The original canopy was installed sometime between 1926 and 1929. The exact structure and signs on the canopy have existed for 12 years. The canopy cover was replaced by Mylan sometime in 1978. No permit was sought at that time as required by the village sign code.

In 1985, the village began a two-year improvement project in its central business district which included, *inter alia*, installation of a new, uniform streetlighting system. Work on the project was scheduled to be completed by October 13, 1986. The village hired PRC Engineering (PRC), a professional engineering firm, to design a streetlighting system using standardized fixtures capable of illuminating the public way for the safety of both pedestrian and vehicular traffic. In addition, the lighting system was to provide enough light to deter crime in the central business district. The village did not specify the location of any streetlight fixture, but rather relied upon PRC's recommendations.

Preliminary engineering plans were prepared prior to February 18, 1986, at which time the village conducted a public hearing to receive comments on the plans. Notice of the public hearing was mailed

to persons receiving water bills from the village, including Blaszczak, and notice was also published in the newspaper. The notice did not specifically mention the placement of streetlights, but rather was a general notification that capital improvements would be taking place in the central business district. Neither Blaszczak nor Mylan was in attendance at the public hearing. Blaszczak testified that he did not receive notice of the hearing.

The plans discussed at the hearing indicated that a streetlight fixture would be located in the space occupied by the canopy. The village subsequently adopted an ordinance authorizing the improvement of Main Street in accordance with the final plans prepared by PRC. Pursuant to the final plans, the locations of the streetlight fixtures were subject to change at the engineer's direction. The lights along Main Street were in fact spaced with no two being the same distance apart.

On September 5, 1986, representatives of the village met with Blaszczak and Mylan to discuss the location of the proposed streetlight. The parties also discussed removal or modification of the canopy to accommodate the streetlight. On September 8, 1986, the parties met again, this time with a representative of Williams Awning Company. At this meeting the parties discussed modifying the canopy to avoid interference with the streetlight fixture. The purpose of this meeting was to obtain information on the type of modification necessary to relocate the canopy and to obtain an estimate on the cost.

On September 9, 1986, Blaszczak and Mylan sent a letter to the village president requesting that work on the streetlight be stopped until the problem was resolved. Mylan subsequently advised Blaszczak that the permanent removal of the canopy and sign would harm her business. Mylan testified that 80% of her business was generated from the advertising on the canopy. Mylan later testified that if she was able to maintain a sign in conformance with the Glen Ellyn sign code of substantially the same size as the one on the existing canopy, but set back 3 feet from the curb so as not to interfere with the streetlight, she would be able to adequately draw clients to her business.

Sometime around the middle of September, the existing sidewalk in front of 413 Main Street was removed, eliminating the support for the poles at the outer end of the canopy and rendering the canopy crooked. In addition, a base was installed for the light fixture.

On September 16, 1986, plaintiffs filed suit requesting a preliminary and permanent injunction against the village. Plaintiffs also filed an emergency motion for a temporary restraining order, orally advising the attorney for the village that they would appear on the morn-

ing of September 17, 1986, to request the temporary restraining order.

On September 17, 1986, the village filed its appearance and answer denying the substantive allegations of the complaint and stating affirmative defenses. No temporary restraining order was entered, and the hearing was continued to September 24, 1986. On September 24, 1986, the temporary restraining order was not sought, and the hearing was continued to September 26, 1986. No proceedings were held on September 26, 1986.

On October 3, 1986, the village delivered a letter to the plaintiffs and Mylan advising them to remove the canopy. The letter further advised them that their failure to remove the canopy by the following Monday, October 6, 1986, at 4 p.m., would result in its removal by the village. The letter was sent in order to bring the matter to a prompt conclusion so that the project could be completed within the time frame of the contractor, who was working under a bonus-penalty contract.

On October 4, 1986, Williams Awning Company gave an estimate indicating that the cost of modifying the canopy frame to avoid interference with the streetlight would be $452.

On October 6, 1986, plaintiffs' counsel appeared in court and, without giving notice to the village, requested that the trial court issue a temporary restraining order against the village. No additional sworn testimony or affidavits were presented in support of this second request for a temporary restraining order or in support of a waiver of notice. At the time the temporary restraining order was entered, the attorney for the village was out of town. However, an attorney from the office representing the village was available to appear and argue on its behalf. The trial court issued the order without notice on the belief that the case had been settled and that the October 3, 1986, letter had been sent to the plaintiffs as a result of miscommunication.

On October 10, 1986, the village sent a letter to Blaszczak and Mylan indicating its willingness to pay for the modification of the canopy. Also on that date, the village filed a motion to dissolve the temporary restraining order. A hearing on the motion was conducted on October 15, 1986, and was subsequently continued to October 16, 1986. On October 16, 1986, evidence concerning the preliminary injunction was heard, and the hearing was continued to October 17, 1986. On October 17, 1986, the court continued the temporary restraining order beyond the initial 10-day period to October 20, 1986.

On October 20, 1986, without expressly ruling on the village's mo-

tion to dissolve the temporary restraining order, the trial court entered an order granting a preliminary injunction, enjoining the village from completing the streetlight or from interfering in any way with the plaintiffs' canopy. The village appeals from both orders of the trial court. We reverse.

There are two issues on appeal: (1) whether the trial court abused its discretion by issuing a preliminary injunction enjoining the village from installing a streetlight in the public right-of-way; and (2) whether the trial court erred by entering a temporary restraining order without notice to the village.

■■ With respect to the first issue, the village contends that the trial court abused its discretion when it entered the preliminary injunction enjoining the village from installing the streetlight. For a preliminary injunction to issue, the party seeking the injunction must show that: (1) he possesses a certain and clearly ascertainable right which deserves protection; (2) he will suffer an irreparable injury if the injunction is not granted; (3) the threatened injury to him would be immediate, certain, and great if the injunction is denied, while the loss or inconvenience to the defendant is comparatively small and insignificant if it is granted; (4) there is no adequate remedy at law; (5) he is likely to be successful on the merits; and (6) there would be no injurious effect upon the general public. (See *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 387; *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1144; *Board of Education v. Eckmann* (1982), 103 Ill. App. 3d 1127, 1130.) A trial court is permitted a large amount of discretion in determining whether to grant or deny a preliminary injunction, and its determination should not be overturned on review absent a showing of the abuse of that discretion. *Hayden's Sport Center, Inc. v. Johnson* (1982), 109 Ill. App. 3d 1140, 1144-45.

■■ In the instant case, the village contends that the trial court abused its discretion for the following reasons: (1) the plaintiffs failed to plead a clearly ascertainable right to maintain a private canopy extending over the public sidewalk at a location which prevents the village from installing a required streetlight; (2) since the plaintiffs have no right to maintain an encroachment on the public right-of-way, they have no likelihood of success on the merits of their complaint for an injunction; (3) plaintiffs, as owners of the building, have not shown any irreparable harm that would result from the installation of the streetlight; (4) if plaintiffs have suffered damages, they have an adequate remedy at law; and (5) the hardship imposed on the village and the public in being prevented from installing the streetlight is sub-

stantially greater than that which would be suffered by the plaintiffs if required to abate their encroachment into the public way. We find that the plaintiffs have failed to show a clearly ascertainable right to maintain the canopy over the public way and, therefore, need not address the other elements necessary for a preliminary injunction to issue.

The village contends that the plaintiffs do not possess an ascertainable, protected right in their private use of the public right-of-way; therefore, the preliminary injunction should not have issued as a matter of law. The village argues that because public ways are held in trust by the municipal authority for the benefit of the public, the public has primary rights to the use of the public right-of-way and the public's interest is paramount to that of abutting landowners. We agree.

The streets and sidewalks of a city are held in trust by the municipality for the use of the public. (See *City of Elmhurst v. Buettgen* (1946), 394 Ill. 248, 251.) The primary right to the use of the streets and sidewalks of a city belongs to the public and not to abutting property owners. (394 Ill. 248, 251.) The public's right to use the public right-of-way in all its parts, including the sidewalks, is paramount. 394 Ill. 248, 251.

Plaintiffs argue that the right to erect a canopy containing a sign is part and parcel of the property right of the business in which the plaintiff is engaged. Plaintiffs contend that the canopy is a reasonable private use of the public way. In support of this position, plaintiffs cite the case of *Illinois Life Insurance Co. v. City of Chicago* (1927), 244 Ill. App. 185. In *Illinois Life*, a private property owner challenged the city's right to remove a sign from the plaintiff's building. (244 Ill. App. 185, 188-89.) The court found that the sign predated the applicable zoning ordinance authorizing removal and held that the city could not deprive a private citizen of his right to use his property for commerce by an ordinance passed after the right was acquired. 244 Ill. App. 185, 193-94.

Plaintiffs' reliance on *Illinois Life* is misplaced. Notwithstanding the fact that the plaintiffs in this case have no interest in the sign on the canopy, the canopy here extends well out from the plaintiffs' property across the public sidewalk and to the curbline. In *Illinois Life*, the court noted that the sign was located 15 feet within the plaintiff's property line. (244 Ill. App. 185, 189.) Furthermore, two recent cases involving the private use of a public right-of-way support our holding. See *Foster & Kleiser v. City of Chicago* (1986), 146 Ill. App. 3d 928; *City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710.

In *City of Belleville*, the city prosecuted Kesler for violating the city sign code. (101 Ill. App. 3d 710, 711.) Kesler's sign projected over a public right-of-way, in violation of the sign code. (101 Ill. App. 3d 710, 711.) The trial court held the sign code unconstitutional, and the city appealed. (101 Ill. App. 3d 710, 712-13.) On appeal, the court noted that because the sign projected into the public way, the city could properly prohibit it. (101 Ill. App. 3d 710, 713.) The court noted that the city has a duty to keep the public way free from obstructions which may be hazardous to the public safety and which tend to delay or obstruct the public in the use of the streets and sidewalks. (101 Ill. App. 3d 710, 714.) The court held that an abutting landowner has no inherent right to operate his business in or upon the streets of a city, and the right to erect and maintain a sign projecting over a public way is permissive only and may be withdrawn at any time. (101 Ill. App. 3d 710, 714.) The court specifically distinguished the city's right to terminate a use projecting over a public way from cases involving nonconforming uses which are located exclusively on private property. 101 Ill. App. 3d 710, 714; accord, *Foster & Kleiser v. City of Chicago* (1986), 146 Ill. App. 3d 928; *People ex rel. Herman Armanetti, Inc. v. City of Chicago* (1953), 415 Ill. 165.

The plaintiffs attempt to distinguish *City of Belleville* by arguing that in that case the plaintiff's use was subject to termination on the basis of public safety, apparently making a distinction between a sign hanging over a public way and a canopy. This argument is unavailing. (See *Hibbard, Spencer, Bartlett & Co. v. City of Chicago* (1898), 173 Ill. 91 (wherein the court refused to enjoin the city from removing an awning projecting over the public right-of-way, holding that it was an encroachment into the public street and it could be removed).) Plaintiffs contend that no issue of public safety is involved in this case. However, the record clearly indicates that the streetlighting system was intended to provide sufficient illumination of the public way to deter crime and to make the public way safe for both pedestrian and vehicular traffic. Furthermore, the cases clearly establish that the public is entitled to use public ways free of all obstructions and impediments which delay or obstruct traffic or annoy the public in its use of the streets. See *People ex rel. Herman Armanetti, Inc. v. City of Chicago* (1953), 415 Ill. 165, 168; *Peoples Gas Light & Coke Co. v. City of Chicago* (1952), 413 Ill. 457, 464-66; *City of Belleville v. Kesler* (1981), 101 Ill. App. 3d 710, 714.

On the basis of the above authorities, we conclude that the plaintiffs have failed to show an ascertainable right deserving of protection. Absent such a right, the preliminary injunction should not have

issued as a matter of law.

The second issue before this court is whether the trial court erred by entering a temporary restraining order against the village without notice. Plaintiffs make two arguments in support of the trial court's decision. Plaintiffs first argue that as a result of the October 20, 1986, order granting them a preliminary injunction, the issue concerning the propriety of the temporary restraining order is moot. We disagree.

In *In re Marriage of Schmidt* (1983), 118 Ill. App. 3d 467, 469-70, a temporary restraining order was issued against the respondent in a divorce action enjoining him from disposing of marital assets. The court entered the temporary restraining order without notice to the respondent and subsequently extended the temporary restraining order an additional 10 days. (118 Ill. App. 3d 467, 470.) At the end of that 10-day period, the court granted a preliminary injunction. (118 Ill. App. 3d 467, 470.) The respondent moved to dissolve both the temporary restraining order and the preliminary injunction, and these motions were denied. (118 Ill. App. 3d 467, 470.) On appeal, the petitioner argued that the propriety of the temporary restraining order and order extending its duration were moot since the motions to dissolve the orders were filed after the preliminary injunction was issued. (118 Ill. App. 3d 467, 472-73.) The respondent replied that the issue was not moot by virtue of the damage provisions of section 11—110 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 11—110).

Section 11—110 provides, *inter alia*, that in all cases where a temporary restraining order or a preliminary injunction is dissolved, the party who was injured by the entry of the order may be awarded damages. (Ill. Rev. Stat. 1985, ch. 110, par. 11—110.) Agreeing with the respondent, the court held that a litigant who is successful in obtaining a dissolution of a preliminary injunction should be able to recover damages from the time he was first improperly enjoined. (*In re Marriage of Schmidt* (1983), 118 Ill. App. 3d 467, 473; see also *In re Marriage of Grauer* (1985), 133 Ill. App. 3d 1019.) Where the record indicates the possibility that a party subject to an improperly issued temporary restraining order would suffer compensable damages, the issue as to the order's propriety is not moot. *Rotary Club v. Harry F. Shea & Co.* (1983), 120 Ill. App. 3d 988, 994.

Here, the village had removed portions of the sidewalk in front of plaintiffs' building and had already installed the base for the streetlight. In addition, the village was working with contractors on a bonus-penalty contract with a completion date set for October 13,

1986. As a result of the temporary restraining order, the village was not permitted to complete construction within the time allotted by the contract. Given the nature of the village's possible damage, the issue of whether the temporary restraining order was proper is not moot.

■■ Having determined that the issue is not moot, this court must determine whether the temporary restraining order was properly issued without notice. Plaintiffs argue that the circumstances of this case permit the issuance of a temporary restraining order without notice. We disagree.

Section 11—101 of the Code of Civil Procedure provides, in pertinent part:

> "No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be indorsed with the date and hour of signing; shall be filed forthwith in the clerk's office; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after the signing of the order, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the granting of the extension shall be stated in the written order of the court." (Ill. Rev. Stat. 1985, ch. 110, par. 11—101.)

These statutory provisions are not mere technicalities. (*Bettendorf-Stanford Bakery Equipment Co. v. UAW Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 23.) The law does not favor the granting of injunctive relief without notice, and such a drastic remedy is appropriate only under the most extreme circumstances. 49 Ill. App. 3d 20, 24.

Plaintiffs cite *G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 4, for the proposition that a court may grant injunctive relief without notice. However, that court went on to hold that the circumstances in *Sternberg* did not justify such a result. (16 Ill. App. 3d 1, 6.) In *Sternberg*, the plaintiff, without notice, obtained an order enjoining the defendant from enforcing his rights under a contract which was the subject of litigation between the parties. (16 Ill. App. 3d 1, 2.) The plaintiff argued that a letter which was sent to him by

the defendant advising the plaintiff that he would proceed to enforce his rights in defiance of the pending litigation created the urgency necessary to obtain the injunction without notice. (16 Ill. App. 3d 1, 5.) The court concluded that the letter was insufficient to show that the plaintiff would suffer irreparable injury if notice was given. 16 Ill. App. 3d 1, 6; see also *Sangamo Electric Co. v. UAW* (1976), 42 Ill. App. 3d 563, 564; *Skarpinski v. VFW* (1951), 343 Ill. App. 271, 275-76.

Similarly, an examination of the record in the instant case does not indicate any urgency which would require that the court take such drastic action as issuing a temporary restraining order without notice. While the principal attorney for the village was out of town, other attorneys were prepared on the case and were available to argue on the village's behalf had notice of the hearing been given. The trial judge conceded in the hearing on the motion to dissolve that notice should have been given. The attorney for the village had filed an appearance, answer, and affirmative defenses. He was known to the plaintiffs and had previously appeared in court on short, informal notice. At the very least, informal or oral notice of the October 6, 1986, hearing should have been given either to the village or to the office of the attorney for the village.

 █ The village further contends that the temporary restraining order is deficient since it does not specify facts as to why notice was not required. (See Ill. Rev. Stat. 1985, ch. 110, par. 11—108.) The plaintiffs argue that although the order does not state these facts, they were stated clearly and concisely from the bench.

Although ordinarily a presumption of validity attaches to an order of the court, no such presumption is indulged in favor of injunctive relief granted without notice. (*Bettendorf-Stanford Bakery Equipment Co. v. UAW Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 24; *G. H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 5.) In the instant case, the order entered did not state facts regarding why the order was entered without notice, but rather contained a general conclusion that the plaintiffs would suffer irreparable injury. Mere conclusions that irreparable injury will result which do not define that injury or why the order was entered without notice are not sufficient. (*Bettendorf-Stanford Bakery Equipment Co. v. UAW Local Union No. 1906* (1977), 49 Ill. App. 3d 20, 23.) Because the temporary restraining order was issued without notice where notice could have been given and because the order did not specify the facts giving rise to its issuance without notice, the trial court erred when it entered the order.

The trial court abused its discretion when it issued a preliminary

injunction where plaintiff failed to show an ascertainable, protected right. In addition, the trial court erred when it entered the temporary restraining order without notice. Accordingly, the orders granting plaintiffs a preliminary injunction and temporary restraining order are reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.