**MARINE ONE, INC., Robert E. Schmidt, Plaintiffs–Appellants, Cross–Appellees,**

**Marine Two, Inc., et al., Plaintiffs,**

v.

**MANATEE COUNTY, Manatee County Board of Commissioners, in their official capacity, Edward W. Chance, Vernon Vickers, Kent G. Chetlain, Westwood H. Fletcher, Jr., and Lloyd C. Hagaman, Defendants–Appellees, Cross–Appellants.**

**No. 87–3656.**

United States Court of Appeals,
Eleventh Circuit.

April 25, 1990.

---

A. Yes.

David P. Ackerman, L. Louis Mrachek, G. Joseph Curley, W. Palm Beach, Fla., for plaintiffs-appellants, cross-appellees.

H. Hamilton Rice, County Atty., Bradenton, Fla., Robert Pass, Tampa, Fla., for Manatee County, Manatee County Bd. of Com'rs, et al.

Frances Makemie Toole, John R. Bush, Tampa, Fla., for Edward W. Chance, Vernon Vickers, et al.

ON PETITION FOR REHEARING AND
SUGGESTION FOR REHEARING
IN BANC

Before RONEY *, and HILL *, Senior Circuit Judges, and MARCUS **, District Judge.

RONEY, Senior Circuit Judge:

In an opinion filed July 19, 1989 affirming the denial of relief in this § 1983 action concerning the rescission of marine construction permits, this panel determined that the petitioners lacked a protectable property interest in the building permits that were rescinded by Manatee County, Florida's Board of County Commissioners. *Marine One, Inc. v. Manatee County*, 877 F.2d 892 (11th Cir.1989). On August 8, 1989, petitioners filed a petition for rehearing, asserting our decision is contrary to *A.A. Profiles, Inc. v. City of Ft. Lauderdale*, 850 F.2d 1483 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1743, 104 L.Ed.2d 180 (1989); *Corn v. City of Lauderdale Lakes*, 816 F.2d 1514 (11th Cir. 1987), and *Wheeler v. City of Pleasant Grove*, 664 F.2d 99 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 973, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982). Those cases are alleged to support the proposition that in Florida there is a protectable property interest in a building permit.

There is one salient feature of the instant case, however, that distinguishes it from the three cases that petitioners cite. In each of those cases, a city's application of its zoning laws to owners of *private* property was determined to constitute a taking of that property; here the land upon which construction was to be permitted is *publicly-owned*. The state owns the wa-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Stanley Marcus, U.S. District Judge for the Southern District of Florida, sitting by designation.

ters and the submerged lands upon which petitioners sought to build a dock.

As noted in the original opinion, state law creates and defines the parameters of a plaintiff's property interest for § 1983 purposes. *Marine One*, 877 F.2d at 894 (citing cases). The Florida Constitution provides:

> The title to lands under navigable waters, within the boundaries of the state ... is held by the state, by virtue of its sovereignty, in trust for all the people.

Fla. Const. art. X § 11. Florida's highest court recently termed it an "uncontroverted legal proposition" that "Florida received title to all lands beneath navigable waters, up to the ordinary high water mark, as an incident of sovereignty, when it became a state in 1845." *Coastal Petroleum Co. v. American Cyanamid Co.*, 492 So.2d 339, 342 (Fla.1986), *cert. denied sub nom. Mobil Oil Corp. v. Board of Trustees of Internal Improvement Trust Fund of State of Florida*, 479 U.S. 1065, 107 S.Ct. 950, 93 L.Ed.2d 999 (1987). Petitioners acknowledge that their marina project required them to obtain a "sovereignty submerged land lease" from the state of Florida.

Because Florida holds title to these submerged lands "in trust for all the people" of the state, it has been held that

> such trust is governmental and *may not be completely alienated* but that in the interest of the people, the State ... may grant to individuals *limited privileges* or rights in such lands.

*Holland v. Ft. Pierce Financing & Constr. Co.*, 157 Fla. 649, 27 So.2d 76, 81 (1946) (emphasis added), *quoting Caples v. Taliaferro*, 144 Fla. 1, 197 So. 861, 863 (1940).

A public interest in navigable waters and submerged lands which Florida is obliged to protect is the interest in unimpeded navigation. *Hayes v. Bowman*, 91 So.2d 795, 799 (Fla.1957). Accordingly, governmental authorities routinely "consider navigational aspects in regulating the construction of docks" that protrude into public waterways. *Board of County Commissioners of Pinellas County v. Ford*, 419 So.2d 786, 789 (Fla.Dist.Ct.App.1982). The state may

act through officials on the county level in protecting the public's navigational interest, since the facilitation "of carriage and commerce ... [lies] within the purposes for which county governments are established." *Board of Commissioners of Escambia County v. Board of Pilot Commissioners of the Port of Pensacola*, 52 Fla. 197, 42 So. 697, 702 (1906).

Although no Florida cases have been cited where a permit to perform activities on public land was revoked, it is clear from other Florida cases that revocation of such a permit would not constitute a taking of property. In *Graham v. Edwards*, 472 So.2d 803, 807 (Fla.Dist.Ct.App.1985), *review denied*, 482 So.2d 348 (Fla.1986), the court stated that a permit to erect structures on sovereign submerged lands does not exempt the permit-holder from exercise of the state's proprietary powers over those lands. Those proprietary powers are founded on the "public trust doctrine," long a part of Florida jurisprudence, even before article X, § 11 of the Florida Constitution was adopted. *Coastal Petroleum v. American Cyanamid*, 492 So.2d at 344. Where state authorities exercise these proprietary powers to prevent a public harm, like hindrance to navigation, it is doubtful that Florida courts would find a taking, since the Florida Supreme Court has stated:

> If the regulation creates a public benefit it is more likely an exercise of eminent domain, whereas if a public harm is prevented it is more likely an exercise of the police power.

*Graham v. Estuary Properties, Inc.*, 399 So.2d 1374, 1381 (Fla.), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981).

In other jurisdictions whose bodies of law contain similar "public trust doctrine" and constitutional taking principles, revocation of permits to perform activities on public land are not treated as takings of property. Both federal and other state cases stand for the proposition that permits to perform activities on public land—whether the activity be building, grazing, prospecting, mining or traversing—are

mere *licenses* whose revocation cannot rise to the level of a Fifth Amendment taking. Among the federal cases are: *United States v. Locke,* 471 U.S. 84, 104–05, 105 S.Ct. 1785, 1797–98, 85 L.Ed.2d 64 (1985) ("The United States, as owner of the underlying fee title to the public domain, maintains broad powers over the terms and conditions upon which the public lands can be used, leased, and acquired.... Claimants thus must take their mineral interests with the knowledge that the Government retains substantial regulatory power over those interests"), *United States v. Chicago, Milwaukee, St. Paul & Pacific R.R. Co.,* 312 U.S. 592, 596, 61 S.Ct. 772, 775, 85 L.Ed. 1064 (1941) (riparian landowner's license to erect river structures is "subordinate to the dominant power of the federal government in respect of navigation"), *Acton v. United States,* 401 F.2d 896, 899 (9th Cir.1968), *cert. denied,* 395 U.S. 945, 89 S.Ct. 2018, 23 L.Ed.2d 463 (1969) ("Grazing permits create no interest or estate in public lands, only a privilege which may be withdrawn. No property rights accrue to the licensee upon revocation which are compensable in condemnation"), and *Osborne v. United States,* 145 F.2d 892, 896 n. 5 (9th Cir.1944) ("Numerous instances are to be found where permits issued by a sovereign are highly valuable as between private persons but ... may be revoked by the sovereign without the payment of compensation: [citing cases]").

Cases from other states include *Foster & Kleiser v. City of Chicago,* 146 Ill.App.3d 928, 100 Ill.Dec. 481, 486, 497 N.E.2d 459, 464 (1986), where the court held that no compensable taking occurred when the city revoked a permit to erect two electric signs on public property, despite the fact that the signs had already been put in place. The court noted that the "privilege of erecting a sign projecting over a public way is permissive only and may be withdrawn at any time." *Id.* It added, "No condemnation damages may be awarded when a revocable permit is revoked." *Id. See also State Highway Comm'n of Mississippi v. McDonald's Corp.,* 509 So.2d 856, 862 (Miss. 1987) ("a revocable license [to traverse public property] does not constitute property for which compensation is due upon taking"); *City of Winston–Salem v. Robertson,* 81 N.C.App. 673, 344 S.E.2d 838, 839 (1986) ("the granting of a driveway permit by the State Highway Commission did not vest an irrevocable property right in plaintiff[s] which could ... thereafter be taken [only with] compensation"); *Hawthorne Bank of Wheaton v. Village of Glen Ellyn,* 154 Ill.App.3d 661, 107 Ill.Dec. 97, 102, 506 N.E.2d 988, 993 (1987) ("because public ways are held in trust by the municipality for the benefit of the public, the public has primary rights to the use of the public right-of-way and the public's interest is paramount to that of abutting landowners").

With the decision that petitioners had no property interest in the permits involved in this case thus clarified, the opinion of the Court at 877 F.2d 892 correctly decides this case.

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing in banc (Rule 35, Federal Rules of Appellate Procedure; Eleventh Circuit Rule 26), the Suggestion for Rehearing In Banc is DENIED.